COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Fitzpatrick
Argued at Richmond, Virginia


EMORY ADRIAN GOODSON

v.      Record No. 1176-94-2              OPINION BY
                                   JUDGE JOHANNA L. FITZPATRICK
COMMONWEALTH OF VIRGINIA                MARCH 12, 1996

           FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                 Herbert C. Gill, Jr., Judge

           Margaret Ann Englisby (Denis C. Englisby;
           Englisby & Englisby, on brief), for
           appellant.

           Steven A. Witmer, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


     Emory Adrian Goodson (appellant) was convicted in a jury

trial of being an accessory after the fact to attempted murder of

James Kennedy (Kennedy).  Additionally, he was convicted of

attempted robbery of Kennedy, attempted murder of Irvin Condrey

(Condrey), use of a firearm in the commission of attempted murder

of Condrey, robbery of Condrey, and use of a firearm in the

commission of robbery of Condrey.  On appeal, he argues that the

trial court erred in:  (1) joining his jury trial with his

accomplice's bench trial; (2) granting attempted murder

instructions submitted by the Commonwealth that did not include

intent to kill as a required element; (3) granting instructions

defining malice and allowing the jury to infer malice from the

use of a deadly weapon; (4) refusing an instruction for the

lesser included offense of being an accessory after the fact to

the second attempted murder and the robbery; (5) refusing to strike for cause two prospective jurors; and (6) allowing the Commonwealth to strike the only two African-American jurors on the jury panel. We hold that the trial court erred on the attempted murder charges in failing to include the requirement of a specific intent to kill in the jury instructions. Thus, we reverse and remand his convictions for being an accessory after the fact to attempted murder of Kennedy, attempted murder of Condrey, and use of a firearm in the commission of attempted murder of Condrey. Because the trial court did not err in its joinder of co-defendants for trial or in its rulings to seat the jury, we affirm appellant's convictions for attempted robbery of Kennedy, robbery of Condrey, and use of a firearm in the commission of robbery of Condrey.

### BACKGROUND

On December 22, 1993, appellant met Corey Johnson (Johnson) and Johnson's cousin, Mark Hatcher, and drove Johnson to a job interview. After the interview, Johnson asked if appellant would drive him to pick up a friend, Herbert Ross (Ross). Once Ross joined the others, Johnson told appellant to drive to the Crestar Bank at the Pocono Crossing shopping center. On the way to the bank, appellant overheard Johnson and Ross talking about "taking somebody['s] money after they were getting it out of the bank." At 8:15 p.m., appellant, at Ross's direction, pulled behind James Kennedy's (Kennedy) car, which was parked at the Crestar drive-

- 2 -

through automatic teller machine (ATM).  Johnson and Ross got out of the car, planning to rob Kennedy.  Kennedy heard the word "robbery," saw a black male outside of a vehicle pointing a pistol at him, and fled in his car.  Ross fired two shots at Kennedy's car, striking the car once.  Johnson and Ross returned to appellant's car, and appellant drove the men away from the bank.

Less than two hours later, at 10:00 p.m., appellant pulled into the parking lot of the NationsBank on Midlothian Turnpike. In the car, Johnson and Ross planned another robbery and told appellant he would get a cut.  Irvin Condrey (Condrey) drove up to the ATM and withdrew $150.  Johnson and Ross approached him, and Johnson pointed a pistol at Condrey and demanded the money. Condrey gave Johnson the cash and drove about thirty to forty yards away.  Johnson and Ross got back into appellant's car. Condrey waited until appellant drove out of the parking lot and followed appellant's car down Midlothian Turnpike, flashing his lights and blowing his horn to attract attention.  Johnson fired at Condrey's truck "a good twenty times," and hit the truck at least four times, including once in the windshield on the driver's side.  During his pursuit, Condrey wrote the license plate number of appellant's car on his hand.  Appellant was arrested on December 24, 1993.

## MOTION TO SEVER

Prior to trial, appellant moved to sever his jury trial from

that of his co-defendant Johnson, who had requested a bench trial. Appellant argued that combining a jury trial and bench trial would be confusing and inherently prejudicial. The Commonwealth argued that judicial economy required a joint trial and that the evidence against both defendants was substantially the same and involved approximately fourteen witnesses. In a letter opinion dated April 15, 1994, the trial judge denied appellant's severance motion, finding that "the Commonwealth's Attorney has shown good cause [and] no basis whereby any defendant would be prejudiced." The court joined appellant's jury trial with Johnson's bench trial.

> Code § 19.2-262.1 provides as follows:
>> On motion of the Commonwealth, for good cause shown, the court, in its <u>discretion</u>, may order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses to be tried jointly unless such joint trial would constitute prejudice to a defendant.

(Emphasis added). Code § 19.2-262.1 is similar to Rule 3A:10(b)[1] governing joinder of offenses, which provides as follows:
> The court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto.

---

[1]Rule 3A:10 was amended January 1, 1994, and former subsection (b) was redesignated as subsection (c).

Under Rule 3A:10(b), "[a] trial court has limited discretion to order that an accused be tried concurrently for multiple offenses." Johnson v. Commonwealth, 20 Va. App. 49, 55, 455 S.E.2d 261, 265 (1995). Similarly, Code § 19.2-262.1 limits the discretion of the trial court as to joinder of defendants and requires a court to provide separate trials for individual defendants unless good cause exists for joinder and no prejudice would result from a joint trial. In determining whether a joint trial would prejudice a defendant, the trial court should require "[t]he party moving for severance [to] establish that actual prejudice would result from a joint trial." United States v. Reavis, 48 F.3d 763, 767 (4th Cir.) (emphasis added), cert. denied, 115 S. Ct. 2597 (1995).[2]

Although the trial procedures used in a bench trial may vary from those required in a jury trial, there is nothing inherently prejudicial in joining them for trial. No inherent prejudice arises simply because a defense counsel is allowed to cross-

[2]Federal Criminal Procedure Rule 14 provides as follows: "'If it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.'" Zafiro v. United States, 506 U.S. 534, 538 (1993) (quoting Fed. R. Crim. P. 14). Under Rule 14, "'[t]he grant or denial of a motion for severance . . . is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion.'" Reavis, 48 F.3d at 767. Although Rule 14 contains the presumption that defendants will be tried together unless prejudice is shown, cases interpreting prejudice under Rule 14 are instructive in determining what constitutes "prejudice" under Code § 19.2-262.1.

examine the co-defendant's witnesses, thereby creating the impression that the co-defendants may be hostile to each other's position.  Although the jury may hear evidence that is material or germane only to the co-defendant's charges, appellant has shown no prejudice in this case.  Thus, the trial court did not abuse its discretion in joining appellant and Johnson for trial.

At the time of the motion for severance, appellant made no specific allegation of actual prejudice, but argued only that combining his jury trial with Johnson's bench trial would be "inherently prejudicial."  Appellant's later arguments that the joint trial was confusing and prejudicial did not meet the threshold of establishing actual prejudice.  Ample evidence supports the trial court's finding that good cause existed for the joint trial and that no actual prejudice resulted.

## JURY INSTRUCTIONS--ATTEMPTED FELONY MURDER

Appellant next contends that the trial court erred on the attempted murder charges by failing to include the requisite intent to kill in its instructions to the jury and by extending the felony murder analysis to attempted murder charges where there was no homicide.  No Virginia case has addressed the question of whether attempted felony murder is a crime.  We join the majority of states and hold that, in order for a felony murder analysis to be applicable, a homicide must occur.  Thus, we hold that there can be no conviction for attempted murder without proof of a specific intent to kill.

At trial, the Commonwealth combined the theories of concert of action used in the robbery and attempted robbery charges and the felony murder doctrine in formulating its instructions on attempted first degree murder. The Commonwealth's Instructions 7 and 16 set forth the elements of attempted first degree murder as follows:

> 1. That the defendant or someone acting in concert with him attempted to kill [victim];
>
> 2. That the attempted killing was malicious; and
>
> 3. That the attempted killing occurred during the commission of attempted robbery/robbery.

No requirement of a specific intent to kill was included in the attempted murder instructions. Additionally, the Commonwealth submitted Instruction 5, defining the overt act required for an attempt crime. However, although the attempted robbery instruction (Instruction 4) required proof of an overt act toward the commission of robbery, the attempted murder instructions did not require proof of an overt act toward the commission of murder.

Appellant first argues that the Commonwealth's instructions removed "one of the basic elements of an attempt" to murder, that is, proof of the specific intent to kill or commit murder. The trial judge stated as follows:

> If you're involved in a felony and a murder occurs, then you're presumed to intend that to be the natural and probable consequence of your act being involved in the robbery, and

> that's the whole purpose of the felony murder doctrine. The intent is presumed. You're arguing that they must show the intent, and I don't know that that's the law, under the felony murder doctrine, and that's the theory of their case.

This ruling effectively relieved the Commonwealth of its burden to prove both the specific intent to kill and an overt act toward the commission of attempted murder.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the 'essentials of a fair trial.'" Eubanks v. Commonwealth, 18 Va. App. 537, 541, 445 S.E.2d 706, 708 (1994) (quoting Campbell v. Commonwealth, 14 Va. App. 988, 995, 421 S.E.2d 652, 656 (1992), aff'd in part, 246 Va. 174, 431 S.E.2d 648 (1993)).

> Code § 18.2-32 defines first degree murder as follows:
> > Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

- 8 -

(Emphasis added).  Under Code § 18.2-32, a killing with malice during the commission of or attempt to commit robbery is punishable as a form of first degree murder known as felony murder.  Spain v. Commonwealth, 7 Va. App. 385, 394, 373 S.E.2d 728, 733 (1988).  "'Where a person maliciously engages in criminal activity, such as robbery, and homicide of the victim results, the malice inherent in the robbery provides the malice prerequisite to a finding that the homicide was murder.'"  Id. (emphasis added) (quoting Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981)).  "'Neither premeditation nor an intent to kill is an element of felony murder'; only malice is required."  Jones v. Commonwealth, 15 Va. App. 384, 388, 424 S.E.2d 563, 565 (1992) (quoting Wooden, 222 Va. at 762, 284 S.E.2d at 814).  "'The [felony-murder] doctrine was developed to elevate to murder a homicide committed during the course of a felony by imputing malice to the killing.'"  Berkeley v. Commonwealth, 19 Va. App. 279, 285, 451 S.E.2d 41, 44 (1994) (emphasis added) (quoting Spain, 7 Va. App. at 393, 373 S.E.2d at 732).

     If a death had occurred in this case, a felony murder analysis would clearly have been appropriate.  However, when there is no completed homicide, but only an attempted homicide, the question is whether the intent to commit a felony provides the requisite element of intent to kill for attempted murder.

     The law is well-established in Virginia that "'[a]n attempt

to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.'" Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607-08 (1995) (quoting Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935)). "A person cannot be guilty of an attempt to commit murder unless he has a specific intent to kill." Haywood, 20 Va. App. at 565, 458 S.E.2d at 607. As to the required intent for attempted murder, the Supreme Court of Virginia has held: "'To commit murder one need not intend to take life; but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it been fatal, would have been murder.'" Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991) (quoting Merritt, 164 Va. at 661, 180 S.E. at 399). See also Thacker v. Commonwealth, 134 Va. 767, 771-72, 114 S.E. 504, 506 (1922) (requiring specific intent to kill for attempted murder). However, no Virginia court has decided whether attempted felony murder is a crime and, if so, whether the specific intent to kill may be imputed from the intent to commit the underlying felony.

The majority of jurisdictions that have addressed this issue hold that there can be no crime of attempted felony murder because the underlying criminal intent to commit the enumerated felony is insufficient to prove the specific intent required for attempted murder. See, e.g., State v. Gray, 654 So. 2d 552, 552-53 (Fla. 1995); People v. Trinkle, 369 N.E.2d 888, 891-92

(Ill. 1977); State v. Robinson, 883 P.2d 764, 767 (Kan. 1994); Bruce v. State, 566 A.2d 103, 105-06 (Md. 1989); State v. Darby, 491 A.2d 733, 736 (N.J. Super. Ct. App. Div. 1984), certification denied, 501 A.2d 905 (N.J. 1985); State v. Price, 726 P.2d 857, 858-60 (N.M. Ct. App.), cert. quashed, 726 P.2d 856 (N.M. 1986); People v. Hassin, 368 N.Y.S.2d 253, 254 (N.Y. App. Div. 1975); State v. Bell, 785 P.2d 390, 392-94 (Utah 1989). Additionally, many states limit the application of the felony murder doctrine to cases involving the commission of an actual homicide. See, e.g., People v. Viser, 343 N.E.2d 903, 910 (Ill. 1975); Head v. State, 443 N.E.2d 44, 50-51 (Ind. 1982); Robinson, 883 P.2d at 767. These states explain that "the fact that bodily injury has occurred in the commission or attempted commission of one of the . . . statutorily-enumerated felonies [does not] warrant[] the presumption that, as a matter of law, the perpetrator possessed the mens rea requisite to murder." Head, 443 N.E.2d at 50. We too decline to extend the felony murder doctrine to create a category of attempted felony murder.

In holding that attempted felony murder is a logical impossibility without proof of a specific intent to kill, other courts have noted that "[o]ne cannot attempt to commit an act which one does not intend to commit." Hassin, 368 N.Y.S.2d at 254 (citation omitted). As the Supreme Court of Illinois stated in Trinkle, "[f]elony murder, unlike attempted murder, does not require an intent to kill." 369 N.E.2d at 891.
[T]he crime of attempted felony murder is

- 11 -

logically impossible. . . . [F]elony murder is based on a legal fiction that implies malice aforethought from the actor's intent to commit the underlying felony.  This means that when a person is killed during the commission of certain felonies, the felon is said to have the intent to commit the death-- even if the killing was unintended.

Gray, 654 So. 2d at 553 (citations omitted).  Similarly, those courts requiring an actual death before applying a felony murder analysis have recognized that:

[T]he purpose of the felony-murder doctrine is to deter those engaged in felonies from killing negligently or accidentally . . . . [A] homicide must occur for the felony-murder rule to apply. . . . [T]he doctrine [should not be extended] beyond its legislative rationale of deterring foreseeable deaths that occur during an inherently dangerous felony.

Robinson, 883 P.2d at 767 (emphasis added).

We agree with the rationale of Robinson.  Accordingly, we hold that the jury instructions on attempted first degree murder in the present case were deficient because they lacked the requirement of a specific intent to kill in order to prove attempted murder.  To allow use of the felony murder doctrine to impute specific intent from the intent to commit the underlying felony would eliminate the Commonwealth's burden to prove a specific intent to kill as an element of attempted murder.  See Viser, 343 N.E.2d at 911 ("Such an instruction, applied to other forcible felonies, would mean that every person who commits burglary, or robbery, or rape, is guilty of attempt murder.").  Thus, in an attempted first degree murder case under Code

§ 18.2-32, the Commonwealth is required to prove the specific intent to kill by one of the enumerated means of "poison, lying in wait, imprisonment, [or] starving," or by a "willful, premeditated, and deliberate" act. See Smith v. Commonwealth, 220 Va. 696, 700, 261 S.E.2d 550, 553 (1980) (holding that premeditation means adopting a specific intent to kill, distinguishing first from second degree murder).

Additionally, the jury instructions on the attempted murder charges, unlike Instruction 4 on the attempted robbery charge, did not require proof of an overt act toward the consummation of the crime. In Virginia, a charge of attempted murder requires the Commonwealth to prove that the accused or someone acting in concert with the accused committed an "overt but ineffectual act . . . in furtherance of the criminal purpose." Martin v. Commonwealth, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992) (en banc). Thus, the attempted murder instructions granted by the trial judge were deficient because they did not contain the essential elements of the offense. Upon retrial, the trial court's instructions to the jury on the attempted murder charges, if the evidence warrants giving such instructions, must contain specific intent to kill as an element and the overt act required for an attempt to murder.

### JURY INSTRUCTIONS--MALICE

Appellant also argues that the trial court erred in instructing the jury on the definition of malice and in allowing

the jury to infer malice as to the attempted murder charges from the use of a deadly weapon by a participant in the robbery or attempted robbery.

In a first degree murder case, "[m]alice is subsumed in proof of willfulness, deliberateness, and premeditation in the commission of a criminal offense." Mackall v. Commonwealth, 236 Va. 240, 254, 372 S.E.2d 759, 768 (1988), cert. denied, 492 U.S. 925 (1989). Proof of a specific intent to kill is a necessary element of every attempted first degree murder. Therefore, proof of intent to kill establishes malice, and no separate proof of malice is necessary. However, "[t]he use of a deadly weapon, standing alone, is not sufficient to prove the specific intent required to establish attempted murder." Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974) (emphasis added). Thus, under these facts, should the Commonwealth proceed with the attempted murder prosecutions, instructions on malice are unnecessary upon retrial.

## JURY INSTRUCTIONS--LESSER INCLUDED OFFENSE

Appellant next argues that the trial judge erred in refusing an accessory after the fact instruction regarding the second robbery and attempted murder of Condrey.

"[T]he trial court should instruct the jury only on those theories of the case which find support in the evidence." Morse v. Commonwealth, 17 Va. App. 627, 632-33, 440 S.E.2d 145, 149 (1994). "'If any credible evidence in the record supports a

proffered instruction on a lesser included offense, failure to give the instruction is reversible error.' 'Such an instruction, however, must be supported by more than a mere scintilla of evidence.'" Brandau v. Commonwealth, 16 Va. App. 408, 411, 430 S.E.2d 563, 564 (1993) (citations omitted). "[T]he weight of the credible evidence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis." Id. at 412, 430 S.E.2d at 565.

The trial court did not err in refusing to instruct the jury on the lesser included offense of being an accessory after the fact to the crimes committed against Condrey. The evidence established that the incident involving Condrey was the second attack on an ATM customer within a two-hour period. Appellant participated in the first incident by driving Johnson and Ross to the ATM, saw Johnson and Ross attempt to rob Kennedy, knew that Ross had a gun, and saw Ross shoot at Kennedy. He also knew that Johnson and Ross were planning a second robbery, was told that he would get some of the stolen money, and drove the car to the second ATM and during the shoot-out and chase with Condrey. Thus, no evidence supported an accessory after the fact instruction on the robbery and second attempted murder charge.

## JUROR STRIKES--CAUSE

During voir dire, appellant moved to strike Karen Minor (Minor) and Patricia Kelley (Kelley). When the trial judge asked

if any prospective jurors had acquired information about the case, Minor stated that she worked in the same building as Kennedy and that there had been "a lot of discussion about the case at work."  Minor never discussed the case with Kennedy and worked in a different department on a different floor.  Minor agreed that the discussion at the office would not prevent her from rendering a fair trial to appellant.  Minor also agreed that she would not feel uncomfortable rendering a decision favorable to appellant, and that she had not formed an opinion as to appellant's guilt or innocence.

Kelley was an employee of Crestar Bank at its downtown headquarters.  She had not heard anything about the case and was not aware that one of the ATM machines involved in the case was at a Crestar branch.  Like Minor, she indicated that she would be able to give appellant a fair trial.

"'The partiality or impartiality of an individual juror is a factual issue best determined by the trial court.'"  Swanson v. Commonwealth, 18 Va. App. 182, 186, 442 S.E.2d 702, 704 (1994) (quoting Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099 (1986)).  "'Because the trial judge has the opportunity . . . to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors,' the disposition of a challenge for cause is an exercise of judicial discretion which will not be disturbed on appeal, absent manifest error."  Swanson, 18 Va.

- 16 -

App. at 186, 442 S.E.2d at 704 (quoting Pope v. Commonwealth, 234 Va. 114, 123-24, 360 S.E.2d 352, 358 (1987), cert. denied, 485 U.S. 1015 (1988)).

No manifest error exists in this case. The voir dire of Minor established that, although she worked in the same building as one victim, she did not work in the same department and had not discussed the case with him. She indicated that the discussion of the case at work would not prevent her from giving appellant a fair trial.[3] Likewise, Kelley stated that she would be able to give appellant a fair trial. Although Kelley worked for Crestar, which owned one of the ATM machines involved in this case, her office was in the downtown headquarters of Crestar, not at the branch office where the attack against Kennedy occurred. Additionally, she indicated that her employment would not bias her against appellant. Thus, no manifest error can be found in the trial judge's ruling refusing to strike these two prospective jurors for cause.

---

[3]This case is distinguishable from Clements v. Commonwealth, 21 Va. App. 386, 464 S.E.2d 534 (1995), in which this Court held that the trial court erred in refusing to strike for cause a juror who overheard gossip about the case. Id. at 388-93, 464 S.E.2d at 535-38. However, in Clements, which involved an appeal of a sodomy conviction, the juror also had a close relative who was raped and sodomized. Id. at 391, 464 S.E.2d at 536-37. Additionally, the entire voir dire of the juror established that the juror would "try" to be fair, that it was possible the gossip would influence his decision, and that he may have already formed an opinion about the case. Id. at 388-93, 464 S.E.2d at 535-38. In this case, Minor stated that she would give appellant a fair trial and that the discussions at work would not influence her decision.

## JUROR STRIKES--PEREMPTORY

Lastly, appellant challenged the Commonwealth's peremptory strikes of two African-American jurors as being violative of the requirements of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1976). The Commonwealth's attorney offered the following reasons for striking the two African-Americans. Katherine Gresham's (Gresham) occupation as a "housekeeping aid" indicated that she had limited education, and she appeared to be visibly upset when the jury was told that the minimum prison sentence for all the charges would be sixty-five years. The other African-American juror, Stella Jones (Jones), was the youngest member of the jury panel and was unemployed. The trial judge found these reasons to be race-neutral and overruled appellant's objection.

In determining whether the Commonwealth's use of peremptory strikes is racially motivated, "the trial court must consider the basis of the challenges, the reasons proffered for the strikes, and any argument presented that such reasons, even if race-neutral, are pretextual, to determine whether the challenger has met his burden of proving purposeful discrimination in the selection of a jury panel." <u>Chandler v. Commonwealth</u>, 249 Va. 270, 277, 455 S.E.2d 219, 223, <u>cert. denied</u>, 116 S. Ct. 233 (1995).

> A "trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal," and this decision will not be reversed unless clearly erroneous. This standard of review logically recognizes the trial court's unique

opportunity to observe and evaluate "the prosecutor's state of mind based on demeanor and credibility" in the context of the case then before the court.

Robertson v. Commonwealth, 18 Va. App. 635, 639, 445 S.E.2d 713, 715 (1994) (citations omitted).  "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"  Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995) (quoting Hernandez v. New York, 500 U.S. 352, 360 (1991)).  Age, education, employment, and demeanor during voir dire may constitute race-neutral explanations for a peremptory strike.  See Stockton v. Commonwealth, 241 Va. 192, 208-09, 402 S.E.2d 196, 205-06, cert. denied, 502 U.S. 902 (1991).

In the instant case, the trial court specifically found that the reasons offered by the Commonwealth's attorney were race-neutral.  The prosecutor struck Gresham because of her apparent limited education and her demeanor, and Jones because of her age and unemployment.  The explanations provided by the prosecutor satisfied the race-neutral standard.  See, e.g., Barksdale v. Commonwealth, 17 Va. App. 456, 460-61, 438 S.E.2d 761, 764 (1993) (en banc) (age is appropriate consideration in using peremptory strike); Winfield v. Commonwealth, 12 Va. App. 446, 452, 404 S.E.2d 398, 401-02 (1991) (limited education apparent from occupation is proper reason to strike juror), aff'd en banc, 14 Va. App. 1049, 421 S.E.2d 468 (1992).  Thus, the trial court's denial of appellant's Batson challenge was not clearly erroneous.

Accordingly, the judgments of the trial court are affirmed

in part, reversed in part, and remanded for a new trial, if the Commonwealth be so advised, on the attempted murder charges and the use of a firearm in the commission of attempted murder charge, with the jury to be instructed in accordance with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.