COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Lemons[*]
Argued by teleconference


CHRISTOPHER J. STROPE

                                MEMORANDUM OPINION[**] BY
v.   Record No. 1549-98-4        JUDGE DONALD W. LEMONS
                                     APRIL 18, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                   David F. Berry, Judge Designate

          Michael T. Leibig (Zwerdling, Paul, Leibig,
          Kahn, Thompson & Wolly, P.C., on briefs), for
          appellant.

          Jeffrey S. Shapiro, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Christopher J. Strope appeals his conviction of nine counts

of charitable contribution fraud, in violation of Code § 57-57.

On appeal, Strope contends (1) that the trial court erred by

granting the Commonwealth's motion to join his trial with a

codefendant and (2) that his conviction violates his

constitutional right to freedom of association under the First

Amendment to the United States Constitution.  Finding no error,

we affirm his convictions.

---

     [*] Justice Lemons prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the
Supreme Court of Virginia.

     [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

# I.  BACKGROUND

Christopher Strope was the Executive Director of the Virginia Coalition of Police and Deputy Sheriffs ("VCOPS"), an organization comprised of police and deputy sheriffs' organizations and unions across the Commonwealth.  In 1995, Strope entered into a contract retaining Atlantic Telemarketing, Inc. ("ATI") to conduct telephone solicitations on behalf of VCOPS.

Between November 21 and December 1, 1996, ATI telemarketers made several calls to Stafford County residents to solicit donations for VCOPS using a written script approved by Strope and the president of ATI, James Bell.  The callers claimed to be either from the Stafford County Sheriff's Department or calling on its behalf and said they were trying to raise money for the families of slain officers, a battered women's shelter, a homeless children's shelter and to purchase bulletproof vests. Citizens were assured that their contributions would be used solely in Stafford County.  Several suspicious residents reported these calls to the Stafford County Sheriff's Department, which was not part of the campaign.

On December 2, 1996, in a telephone conversation between Strope and Deputy Sheriff Timothy O'Leary, Strope confirmed that ATI was currently soliciting donations for VCOPS, and assured O'Leary that he was monitoring the callers and that they were doing everything required of them.  Strope gave O'Leary conflicting information as to where the collected funds were being allocated, whether Stafford County residents were targeted for solicitation and whether donors were to be given receipts.

Strope and Bell knew as early as September, 1996, that Stafford County was an intended target of this telemarketing campaign. Strope and Bell knew that the solicitors were representing themselves as being from the Stafford County Sheriff's Department. Similar complaints had been made in the past. Strope and Bell did not discipline a single caller for making misleading statements during this campaign. Of the $322,000 raised by the campaign, less than 4% actually went to a charitable purpose.

Strope and Bell were charged with identical counts of attempted embezzlement, conspiracy, attempted false pretenses, attempted charitable contributions fraud, misuse of funds and charitable contributions fraud.[1] The trial court granted the Commonwealth's motion to join the trials of Strope and Bell. At trial, the Commonwealth presented evidence that Strope and Bell worked together to prepare a script for telemarketers that was misleading. It also presented evidence that they were in contact with one another regarding media coverage of incidents of telemarketer misrepresentations. The jury convicted both men on the nine counts of charitable contributions fraud and acquitted both men on the remaining charges.

## II.  MOTION FOR JOINDER

Code § 19.2-262.1 provides that:

> On motion of the Commonwealth, for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of

---

[1] The trial court sustained the defendants' motions to strike the conspiracy charges, the attempted embezzlement charges, and one count of attempted charitable contribution fraud.

> acts or occurrences constituting an offense
> or offenses, to be tried jointly unless such
> joint trial would constitute prejudice to a
> defendant. If the court finds that a joint
> trial would constitute prejudice to a
> defendant, the court shall order severance as
> to that defendant or provide such other
> relief justice requires.

We have recognized that "prejudice may result when evidence inadmissible against a defendant, if tried alone, is admitted against a codefendant in a joint trial." Adkins v. Commonwealth, 24 Va. App. 159, 163, 480 S.E.2d 777, 779 (1997). Nevertheless, "[t]he risk of prejudice will vary with the facts in each case, and the decision to permit a joint trial is entrusted to the sound discretion of the trial court." Id. (citations omitted).

On appeal, Strope argues that a joint trial prejudiced him because (1) it denied his right to compel his codefendant to testify, (2) his defenses were unfairly entangled with his codefendant's defenses, (3) the complexity of the case hindered the jury's ability to distinguish the evidence relevant to each defendant, (4) he and his codefendant had different degrees of culpability and (5) he and his codefendant had "antagonistic defenses." At trial, however, Strope only argued that he would be prejudiced by a joint trial because (1) evidence concerning his codefendant would be introduced before a conspiracy was proven, (2) two codefendants may have "antagonistic defenses" and (3) it would allow a codefendant's statement to be improperly admitted if it was made after completion of the conspiracy. Strope never argued to the trial court that he was

prejudiced by evidence that was admitted against Bell in their joint trial but would have been inadmissible against him if tried alone.

In his reply brief, appellant notes that a document entitled "Virginia Coalition of Police and Deputy Sheriff's Script," that was downloaded from an ATI computer drive by the police and did not include a portion identifying the caller as a paid solicitor, would have been inadmissible against him if his trial had not been joined with Bell's and, since it was prejudicial, the Commonwealth's motion for joinder should have been denied. At trial, however, Strope objected to this exhibit on entirely different grounds from those he asserts on appeal. When the Commonwealth introduced the script, Bell's counsel stated, "I don't have an objection, but I may have." He explained that on March 31, 1996, the law changed and unions were required "to comply with the provisions of the section of the code of charitable solicitations that dealt with having the fund raiser identify themselves [sic] as paid fund raisers [sic]." Since the Commonwealth was "not in a position to prove the date on that script" and whether it was used before or after the law change, it would be prejudicial and mislead the jury. The Commonwealth stated that it was in a position to provide a date. Strope's counsel then stated that he had "an objection also" on grounds of relevance since "of all the witnesses who have testified, none of them have testified to receiving the

- that this script was read to them."  The court allowed the Commonwealth's witness to identify and authenticate the document without admitting it into evidence.  The next day, the court admitted the document into evidence as Commonwealth's Exhibit 14 without objection.  Accordingly, with respect to this exhibit, the only ground that is preserved is relevance, and Strope does not argue this ground on appeal.  Pursuant to Rule 5A:18, the only "prejudice" argument that we may consider on appeal is that Strope and Bell had "antagonistic defenses."

On appeal Strope must demonstrate that "actual prejudice would result from a joint trial."  Goodson v. Commonwealth, 22 Va. App. 61, 71, 467 S.E.2d 848, 853 (1996) (citation omitted).  "Actual prejudice results only when 'there is a serious risk that a joint trial would compromise a specific trial right of [defendant], or prevent the jury from making a reliable judgment about guilt or innocence.'"  Adkins, 24 Va. App. at 163, 480 S.E.2d at 779.  "[P]rejudice does not exist merely because a codefendant has a better chance of acquittal if tried separately," Barnes v. Commonwealth, 22 Va. App. 406, 412-13, 470 S.E.2d 579, 582 (1996), nor does it exist because codefendants may have positions that are hostile to one another.  See Adkins, 24 Va. App. at 163, 480 S.E.2d at 779; Goodson, 22 Va. App. at 71, 467 S.E.2d at 853.  Consequently, the fact that Strope and Bell may have had "antagonistic defenses" is insufficient alone to prove actual prejudice.

Furthermore, the assertion of antagonistic defenses is unsupported in the record of this case.  At trial, Strope argued

to the court and to the jury that the script he and Bell jointly approved was not misleading and that the individual solicitors who were tried separately were responsible for any misrepresentations made to callers. Strope never claimed that Bell was responsible. Bell presented the same defense. During closing arguments, both Bell and Strope blamed a few "renegade" solicitors. Accordingly, the record clearly establishes that Strope and Bell did not use "antagonistic defenses." The trial court did not err by joining the trial of Strope and Bell pursuant to Code § 19.2-262.1.

                    III.  FREEDOM OF ASSOCIATION CLAIM

     Strope maintains that his conviction pursuant to Code

§ 57-57(L)[2] violates his right of freedom of association

protected by the First Amendment to the United States

Constitution.  Strope notes that he was found guilty only of

attempting to obtain money by misrepresentation and, according to

Strope, the only evidence supporting that charge was based on his

being associated with VCOPS.  As the Executive Director of VCOPS,

Strope was the signatory to the contract with ATI, which,

incidentally, called for honest solicitation.  Strope claims that

ATI employees violated the contract by misrepresenting

themselves.  Thus, Strope contends that his conviction violates

the First Amendment because it infringes on his freedom of

association.

     In support of his contention, Strope cites <u>Riley v. Nat'l</u>

<u>Fed'n of the Blind of North Carolina</u>, 487 U.S. 781 (1988).  In

<u>Riley</u>, the United States Supreme Court declared unconstitutional

a North Carolina charitable solicitations statute that defined a

<u>prima</u> <u>facie</u> "reasonable fee" that a professional fundraiser may

charge as a percentage of the funds solicited.  <u>Id.</u> at 785-95.

The Court held that the statute violated the First Amendment

since it sometimes required the fundraiser to rebut a <u>prima</u> <u>facie</u>

case that the solicitor's fee was unreasonable.  <u>See</u> <u>id.</u> at

793-95.

_____

     [2] Code § 57-57(L) provides that "No person shall employ in
any solicitation or collection of contributions for a charitable
purpose any device, scheme or artifice to defraud or obtain
money or property by any misrepresentation or misleading
statement."  Violation of this chapter is a misdemeanor.  <u>See</u>
Code § 57-59.

Here, in contrast to Riley, there was no prima facie case of unreasonableness that appellant had to rebut; in other words, Code § 57-57 does not shift the burden of proof to the fundraiser. While the jury may have considered the percentage of the contributions that actually went toward the stated uses for purposes of determining fraud, Code § 57-57 does not mandate such a percentage-based inquiry, nor is fraud "presumed by a surrogate and imprecise formula" within the statute. Id. at 794 n.8. Quite simply, the jury engaged in a lawful finding of fact by considering the allocation of the solicited funds to the purposes stated by the solicitors.

Viewing the evidence in the light most favorable to the Commonwealth, Strope was found guilty of misrepresentation not merely because he entered into a contract with ATI and a few "renegade" ATI solicitors misrepresented who they were and where the solicited funds would be allocated. Strope intended for Stafford County to be a target of this telemarketing campaign. He knew that the solicitors were misrepresenting themselves as being from the Stafford County Sheriff's Department and that they had been accused of similar conduct in the past. He participated in writing the script from which those callers read during the campaign that misrepresented how the funds were to be allocated. Furthermore, the evidence established that Strope's telemarketing campaign resulted in over $322,000 in donations. Of this money, less than 4% was distributed to the purported charitable causes.

## IV. CONCLUSION

We hold that there was no violation of Strope's right of freedom of association under the First Amendment to the United

States Constitution.  For the reasons stated herein, we affirm Strope's convictions.

                                                    <u>Affirmed</u>.