COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

UNPUBLISHED

ANDREW BROCK, JR.

                                                       MEMORANDUM OPINION[*] BY

v.       Record No. 1382-24-1          JUDGE ROBERT J. HUMPHREYS
                                                   DECEMBER 30, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Matthew A. Glassman, Judge

James S. Ellenson for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Andrew Brock, Jr., was convicted of two counts of attempted capital

murder of a law enforcement officer, three counts of malicious shooting at an occupied vehicle, two

counts of use of a firearm in the commission of a felony, three counts of assault and battery of a law

enforcement officer, felony destruction of property, and obstruction of justice. The circuit court

sentenced Brock to a total of 94 years of incarceration, with 20 years suspended. On appeal, Brock

argues that the evidence was insufficient to support the attempted murder convictions because it

failed to demonstrate an intent to kill.[1] For the following reasons, this Court affirms the circuit

court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Brock also contends that this failure, therefore, causes the evidence to be insufficient to
support the use of a firearm in the commission of a felony convictions.

BACKGROUND[2]

On September 15, 2020, Suffolk Police Officer Travis Reichmuth responded to a report of shots fired in the area of North Broad Street and Second Avenue in the City of Suffolk. Reichmuth was wearing his uniform and driving a marked police cruiser. While driving on North Broad Street, Reichmuth saw Brock "jumping up [and] down or skipping" and pulling up his pants. Suddenly, Reichmuth started to see "the flash of gunfire" and heard four or five gunshots. Reichmuth reported the shooting over his radio and continued driving before turning onto a side street and returning to the area.

Brock was no longer at the scene when Reichmuth returned. Reichmuth exited his cruiser and saw bullet holes in the front passenger quarter panel, passenger door, and rear bumper. The cruiser was towed away for processing and repairs. Forensic technicians found several FC .9mm Luger casings and two copper bullet jacket fragments[3] on the street. Technicians also recovered two bullets from Reichmuth's cruiser: one from under the carpet of the passenger floor area and the other from the bottom panel of the passenger door.

The following day, Suffolk Police Sergeant Daniel Rowland learned that Brock had been seen in between a church and a school. Rowland drove to the area and saw someone matching

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)). Additionally, because of Brock's narrow challenges, we limit our recitation to evidence relevant to those convictions.

[3] A bullet jacket covers a bullet's lead core and "picks up the marks when it goes down the barrel."

Brock's description.  Because Rowland was advised that Brock was armed and dangerous, he kept his distance, called for backup, and did not approach Brock.

Sergeants Diggs and Rivera responded to Rowland's request.  Diggs and Rivera, both dressed in uniform, drove to the church together in a marked police cruiser.  When they arrived, Brock was sitting beneath a tree.  Diggs and Rivera exited the car and approached Brock.  Diggs asked Brock for his name and what was going on.  Brock responded with "back up," he "was the man that's wanted," and to "stay right there bro or [he would] shoot."  Diggs did not immediately see a gun and told Brock to show his hands.  Brock asked if Diggs could see his gun and pointed to the ground by his right leg.  Brock then quickly reached as if he was going to grab the gun, causing Diggs and Rivera to point their firearms at Brock.

Diggs told Brock to lay on the ground and turn over.  Brock refused multiple times, telling Diggs "y'all going have to shoot me."  Both Rivera and Diggs had their guns drawn and pointed at Brock but did not fire.  Multiple times Rivera told Brock to not reach for the gun.  Brock asked Rivera to shoot him and started a countdown.  While counting down, Brock lunged towards Rivera, and Rivera fired a single shot at Brock.  Brock rolled back towards his gun, at which point Rivera fired additional shots.  Brock retrieved his gun, raised and directed it towards Rivera, and fired two shots, missing both.  During the exchange, Diggs and Rivera both fired multiple shots.

After a few seconds, Diggs, Rivera, and Rowland[4] slowly approached Brock, who no longer had the gun in his hand.  Rivera kicked Brock's gun away, and the officers handcuffed Brock.  Rowland also gave Brock first aid.  Brock said that he had only two bullets and asked if he hit any of the officers.  He repeated that he "didn't think this through and to let him die."

---

[4] Rowland had started approaching when Diggs and Rivera arrived.

Paramedics arrived and transported Brock to a hospital for treatment. Crime scene technicians processing the scene found two FC .9mm Luger cartridge casings near the tree.[5]

The next day, Suffolk Police Sergeant Casey Thomas interviewed Brock. Brock said that he had been driving around aimlessly in his mother's car,[6] "trying to build up the courage to" aim his gun at a cop so they could kill him. Brock eventually parked the car in Suffolk and started walking. As Brock was walking on Broad Street, he said that he got in an argument with a group of men and the sides exchanged gunfire. As he fled from that fight, he saw Reichmuth and "just started shooting." Brock told Thomas that everything he did was to ensure that police officers would kill him when they saw him. After firing three shots at Reichmuth's cruiser, Brock said that he ran away, hid for a time, and walked to a church, where he stayed the night.

The next day, a woman approached Brock at the church, and he asked her to call the police and leave. When Rivera and Diggs arrived, Brock felt that they got too close, so he told them he was going to shoot. Brock alleged that he was bluffing and had no intention of shooting them but wanted to provoke the officers into killing him. Brock said he "reach[ed] for the gun, . . . hoping it would be over with," but "[t]hey ain't do nothing." Brock further claimed that he "reached for [the gun] twice before they did something" and they only shot him in the shoulder when he "touched it." So, he "grabbed [the gun] and start[ed] shooting." Brock told Thomas that he did not intend to harm Rivera or Diggs and only "wanted to die."

Brock was indicted for three counts of attempted capital murder of a law enforcement officer, one count of attempted capital murder of multiple victims, six counts of maliciously shooting at an occupied vehicle, four counts of use of a firearm in the commission of a felony,

---

[5] Diggs's and Rivera's firearms used .40 caliber cartridges.

[6] Brock told Thomas where to find the car, and officers obtained a search warrant for it. A box of ammunition with nine FC .9mm Luger cartridges was found on the front passenger seat.

three counts of assault and battery of a law enforcement officer, felony destruction of property, and obstruction of justice. At trial, the Commonwealth introduced forensic analyses that concluded that the FC .9mm Luger casings and two copper bullet jacket fragments from the attack on Reichmuth were fired from Brock's gun, as well as the evidence outlined above.

At the close of the Commonwealth's case-in-chief, Brock moved to strike the evidence, arguing it was insufficient to demonstrate an intent to kill. The circuit court denied his motion. Brock played a recording of his interview with Thomas and testified in his own defense. Brock claimed that he had "shot a lot of guns." He admitted that he shot at Reichmuth's cruiser three or four times. Brock claimed that he could have "[e]asily" killed Reichmuth but that was not his intention. Brock agreed that he fired his gun twice during the shootout with Rivera and Diggs but maintained that he did not intend to kill either of them. Brock asserted that, if he wanted to kill them, he would have started shooting immediately when they exited the cruiser, before they had time to pull their weapons. He argued that "it was clear" from the body camera footage that he "was trying to get [himself] killed." Brock said he "didn't plan on taking anybody with" him.

At the close of evidence, Brock renewed his motion to strike, which the circuit court denied. After argument from counsel, the jury convicted Brock of the attempted capital murders of Reichmuth and Rivera, two counts of use of a firearm in the commission of a felony, three counts of maliciously shooting into an occupied vehicle, three counts of assault and battery of a law enforcement officer, felony property damage, and obstruction of justice. The circuit court sentenced Brock to a total of 94 years of incarceration, with 20 years suspended. Brock appeals.

ANALYSIS

On appeal, Brock argues that the evidence failed to prove that he had the intent to kill Reichmuth and Rivera. When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va.

- 5 -

176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

We defer to the fact finder's credibility determinations unless the witness's testimony is "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). In Virginia, this deference, especially as it relates to the fact finder's resolution of conflicting facts and competing inferences, enjoys "the highest degree of appellate deference." *Coleman v. Commonwealth*, 52 Va. App. 19, 23 (2008). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Barney*, 302 Va. at 97 (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Code § 18.2-31(A)(6) prohibits the "willful, deliberate, and premeditated killing of a law-enforcement officer . . . when such killing is for the purpose of interfering with the performance of his official duties." "An attempt to commit a crime is composed of two elements: (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its

commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "Determining intent is 'generally a question for the trier of fact.'" *Id.* (quoting *Haywood*, 20 Va. App. at 566). The jury "may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Id.* (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998)). "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." *Id.* (quoting *Wynn v. Commonwealth*, 5 Va. App. 283, 292 (1987)).

"A charge of attempted capital murder requires proof of . . . 'a specific intent to kill the victim.'" *Jordan v. Commonwealth*, 50 Va. App. 322, 327 (2007) (alteration in original) (quoting *Martin v. Commonwealth*, 13 Va. App. 524, 527 (1992)). "A defendant's intent may be proved by circumstantial evidence, including the defendant's statements and conduct." *Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024). "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991). Furthermore, "a defendant may act with more than one intent." *Eberhardt v. Commonwealth*, 74 Va. App. 23, 38 (2021).

Here, Brock fired multiple rounds at Reichmuth, who was in a moving vehicle, before immediately fleeing. Irrespective of whether or not Brock intended to die himself, it is entirely reasonable for a fact finder to conclude that the deliberate firing of a deadly weapon at someone multiple times is circumstantial evidence that he also intended to kill that person. Further, "flight immediately following the commission of a crime . . . tend[s] to show a person's guilty knowledge of, and participation in, a criminal act." *Walker v. Commonwealth*, 79 Va. App. 737, 749 (2024) (alterations in original) (quoting *Jones v. Commonwealth*, 279 Va. 52, 57 (2010)). "A person's 'flight from a crime scene . . . generally cannot be explained in terms of innocent

human behavior.'" *Id.* (alteration in original) (quoting *Jones*, 279 Va. at 58). Multiple rounds struck Reichmuth's cruiser. When Diggs and Rivera approached Brock the next day, he disregarded their orders to show his hands, lay on the ground, and not reach for his firearm. He also threatened to shoot them. After beginning a countdown and lunging at Rivera, Brock retrieved his gun and emptied the remaining cartridges in his magazine toward Rivera. Considering all of the evidence, a reasonable fact finder could reject Brock's claims that he did not intend to kill or hurt the officers. *See Commonwealth v. Moseley*, 293 Va. 455, 464 (2017).

Though "the use of a deadly weapon, standing alone, is not sufficient to prove the *specific intent* required to establish attempted murder," *Goodson v. Commonwealth*, 22 Va. App. 61, 78 (1996) (quoting *Hargrave v. Commonwealth*, 214 Va. 436, 437 (1974)), we cannot say that here, viewing the evidence in its totality, a reasonable fact finder could not have concluded, beyond a reasonable doubt, that Brock intended to kill Reichmuth and Rivera when he shot his firearm in their direction. *Barney*, 302 Va. at 97. Thus, the circuit court did not err in denying Brock's motions to strike.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment is affirmed.

*Affirmed.*