COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


RODNEY JACOBS CLEMENTS

v.          Record No. 1146-94-1                 OPINION
                                      BY JUDGE JOSEPH E. BAKER
COMMONWEALTH OF VIRGINIA                 DECEMBER 19, 1995


              FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                     Rodham T. Delk, Jr., Judge

              Carl E. Eason, Jr. (Pretlow, Eason & Pretlow,
              on brief), for appellant.

              Robert B. Beasley, Jr., Assistant Attorney General
              (James S. Gilmore, III, Attorney General, on brief),
              for appellee.



     Rodney Jacobs Clements (appellant) appeals from a judgment

of the Circuit Court of the City of Suffolk (trial court) that

approved his jury trial conviction of attempted forcible sodomy.

 The sole issue presented is whether the trial court erred in

refusing to strike juror Glenn Brown (Brown) for cause.  As the

facts relating to appellant's guilt are not at issue, we recite

only those relevant to the juror's qualifications.

     During voir dire of the veniremen, Brown indicated that he

might know or have heard something about the case.  The following

colloquy took place on individual voir dire:

          THE COURT:  All right, Mr. Brown, you have
          indicated that you may know or have heard
          something about this case. . . . What have
          you heard or what do you know about this,
          what information have you received about this
          case?

          JUROR BROWN:  Well, I work in a barber shop
          and I heard rumors about this, I think about

a job or something that he was supposed to have working for this fellow here.

THE COURT:  When you say you have heard rumors, have you heard talk in the barber shop about this case?

JUROR BROWN:  I have.

THE COURT:  Is it just gossip type talk?

JUROR BROWN:  Gossip type.

THE COURT:  Have you read about it in the newspaper or anything like that?

JUROR BROWN:  No, I haven't.

THE COURT:  All right, do you want to inquire further about the kind of information?

MR. PHILLIPS[1]:  Yes, sir.

THE COURT:  What kind of information have you heard about this case?

JUROR BROWN:  It was something about, I believe like he had a job there, like he was supposed to have had some clothes or something he was supposed to be modeling or something.

THE COURT:  What else have you heard?

JUROR BROWN:  Let me see.  Mostly just gossip.

THE COURT:  About the fact that [the appellant] may have committed a criminal offense?

JUROR BROWN:  Right.

THE COURT:  Do you want to go further?

MR. EASON[2]:  I would, Your Honor, please. May I do it?

---

[1] Kenneth A. Phillips, Assistant Commonwealth's Attorney.

[2] Carl E. Eason, Jr., defense counsel.

THE COURT:  Yes.

MR. EASON:  Thank you, Your Honor.  These were discussions between you and customers of yours in the barber shop?

JUROR BROWN:  No, just overhearing talk.

MR. EASON:  Did you join in those conversations?

JUROR BROWN:  No, I didn't.

MR. EASON:  And the overhearing of those talks, did anyone express an opinion as to whether or not [the appellant] was guilty of what you were hearing?

JUROR BROWN:  Not really.

MR. EASON:  Do you think that in hearing these discussions, overhearing these discussions and talks that it would put you in a position where you could not listen to all the evidence and after it comes in to render a fair and impartial decision?

JUROR BROWN:  I would try to be fair with it.

MR. EASON:  You would try to be but do you think you could be?

JUROR BROWN:  I will be fair, I will be fair.

MR. EASON:  Would the evidence that--excuse me, would the talk and gossip, as you so characterize them, that you heard, would that also be considered by you in making your decision today as a juror?

JUROR BROWN:  Going by what you said at first, it's a possibility it would.  I have to be honest with you on that, that's why I told you I have heard rumors about it.

MR. EASON:  I certainly appreciate your honesty.

THE COURT:  Do you think when you heard this talk in the barber--I guess it's talk in the

barber shop, when you heard that and you indicate you didn't really participate in any of it but you heard people talking about it, do you recall that you might have formed or expressed any opinion or conclusion as to whether or not the charge or the matters that [the appellant] may have been accused of were true or not?

JUROR BROWN: Well, to be honest with you, I sort of like got an opinion about it because it was an older person that was dealing with a youth.

THE COURT: So you may have already formed in your mind some sort of an opinion about the case?

JUROR BROWN: Right.

THE COURT: And you feel that--well, let me ask you this: the opinion that you may have formed in your mind, does that put you in a position of requiring the [appellant] to have to prove his innocence?

JUROR BROWN: Well, you asked the question at first and I didn't answer that, but can I go back to that now? I had a close relative last year that had the same thing happen to her.

THE COURT: Anything else, Mr. Phillips?

MR. PHILLIPS: Do you feel you have formed an opinion, sir?

JUROR BROWN: I don't think I have formed an opinion, but I just want to be honest with it.

MR. PHILLIPS: You feel the effect of what happened to your relative would have an effect on your ability to hear this case?

JUROR BROWN: I do.

MR. PHILLIPS: And I don't mean to inquire, but what was it?

JUROR BROWN: It was a case last year, Queen

Hall, where the fellow had kicked her door in, broke in on her, took a fuse out of her box and she was an older lady, as a matter of fact, she was about 80, and she was raped, sodomized.

MR. PHILLIPS: I have no further questions, and I do appreciate your candor, sir.

THE COURT: Are you saying that, because of that, you'd come into this with basically some sort of predisposition against people who are charged with sexual offenses?

JUROR BROWN: Slightly.

THE COURT: Okay. You say slightly, do you believe now that [the appellant], because he is charged, may be guilty of this?

JUROR BROWN: Well, he has to be proven.

THE COURT: Do you believe that you can enter the jury box and hear testimony in evidence in this case and keep an open mind during all of that and wait until the case is presented to the jury for deliberation before you form any opinions about [the appellant]?

JUROR BROWN: I would try my best to keep an open mind.

Appellant moved to strike Brown for cause. The court overruled the motion, stating that Brown "indicated at the conclusion of all of this that he would, he felt that he could be fair and impartial and keep an open mind, that he certainly would make every effort to do that and I am going to allow him to remain on the jury panel . . . ."

The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions. Swanson v. Commonwealth, 18 Va. App. 182, 184, 442 S.E.2d 702, 703

- 5 -

(1994); see also Code § 8.01-358.  For that guarantee to be

effective, persons accused of violating criminal laws must be

provided with "an impartial jury drawn from a panel [of twenty]

free from exceptions."  Breeden v. Commonwealth, 217 Va. 297,

300, 227 S.E.2d 734, 736-37 (1976).  Every prospective juror must

stand indifferent to the cause, "and any reasonable doubt as to a

juror's qualifications must be resolved in favor of the accused."

Id. at 298, 227 S.E.2d at 735.

> "If there be a reasonable doubt whether the
> juror possesses these qualifications, that
> doubt is sufficient to insure his exclusion.
>  For, as has been well said, it is not only
> important that justice should be impartially
> administered, but it also should flow through
> channels as free from suspicion as possible."

Id. (quoting Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943

(1879)).  These principles must be strictly applied and when a

prospective juror equivocates about whether he or she has formed

a fixed opinion, the prospective juror should be stricken by the

trial court.  Id.; Dejarnette v. Commonwealth, 75 Va. (1 Gratt.)

867 (1881).

As in Breeden and the cases cited therein, the voir dire in

this case raised reasonable doubt concerning Brown's ability to

stand indifferent in the cause as required by Code § 8.01-358.

In our review, we must consider the entire voir dire rather than

its isolated parts.  Turner v. Commonwealth, 234 Va. 543, 548,

364 S.E.2d 483, 486, cert. denied, 486 U.S. 1017 (1988); Mullis

v. Commonwealth, 3 Va. App. 564, 570, 351 S.E.2d 919, 923 (1987).

Although efforts to qualify Brown showed he would attempt to properly perform his duties as a juror, reasonable doubt remained about his impartiality.  Brown admitted he had "heard something about the case" that, in part, matched the evidence the selected jury heard "[a]bout the fact that [appellant] may have committed a criminal offense."  Brown also conceded that because of what he had heard about the case, together with the fact that a relative had been the victim of a sex crime, he would hear the evidence with some sort of slight predisposition against people who are charged with sexual offenses.  The admissions created a reasonable doubt that Brown would come indifferent to the cause.

Finally, throughout his voir dire, Brown spoke honestly, showing no unwillingness to serve.  However, those honest answers disclosed equivocation and revealed doubt that he would be able to render a fair verdict.  Brown concluded the voir dire by saying only that he "would try" to be fair, thereby indicating that what he had heard at the barber shop combined with what he knew had happened to a relative, might affect his decision.

For the reasons stated, we hold that reasonable doubt was raised.  We are required to resolve any reasonable doubt about a juror's qualification in appellant's favor.  We hold that the trial court erred when it seated Brown on the panel.  Accordingly, the judgment of the trial court is reversed and this case remanded for such further action as the Commonwealth may be advised.

<u>Reversed and remanded.</u>