COURT OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Lemons and Senior Judge Hodges
Argued at Alexandria, Virginia


RONALD JACKSON BROWN
                                          OPINION BY
v.   Record No. 2810-97-4          JUDGE DONALD W. LEMONS
                                        FEBRUARY 23, 1999
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                  Donald M. Haddock, Judge

        Jeffrey D. Zimmerman for appellant.

        Daniel J. Munroe, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Ronald Jackson Brown appeals his convictions for attempted

rape, forcible sodomy, animate object sexual penetration,

abduction, robbery and assault.  On appeal, he argues that the

trial court erred in: (1) denying his motion to strike three

prospective jurors for cause; and (2) denying him the opportunity

to question the complaining witness about her testimony in a

prior rape case.  Because we hold that the trial court erred by

both refusing to strike two prospective jurors and in improperly

limiting Brown's cross-examination, we reverse his convictions

and remand to the trial court.

                           BACKGROUND

     On May 4, 1997, at approximately 2:00 a.m., the victim, who

we shall designate as Jane Doe, exited a parked car and

approached a police officer claiming that Ronald Jackson Brown,

appellant, had sexually assaulted her.  Because Brown has limited

his appeal to whether the trial court erred in refusing to strike three jurors and whether the trial court erred in refusing to allow him to cross-examine the complaining witness about her testimony in a prior rape case, our recitation of the relevant facts is confined to these two issues.

At trial during voir dire, Brown's attorney moved to strike for cause three prospective jurors. The court denied each motion. In addition, during his cross-examination of Jane Doe, Brown's attorney attempted to question her about her testimony in a 1989 rape case. Ruling that this question was inadmissible pursuant to the "rape shield statute," Code § 18.2-67.7, the court refused to allow it. On September 23, 1997, the jury convicted Brown of attempted rape, forcible sodomy, animate object sexual penetration, abduction, robbery and assault.

## MOTION TO STRIKE PROSPECTIVE JURORS FOR CAUSE

The right of an accused to a trial by an impartial jury is a constitutional right guaranteed under both the United States Constitution and the Virginia Constitution. See U.S. Const. amend. VI; Va. Const. art. I, § 8. The Rules of the Supreme Court of Virginia as well as legislative enactments reinforce this guarantee. See Code §§ 8.01-357; 8.01-358; 19.2-260 et seq.; Rule 3A:14(a). "The trial court's decision whether to strike a prospective juror for cause is a matter submitted to its sound discretion and will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes manifest error." Stockton v. Commonwealth, 241 Va. 192, 200, 402

S.E.2d 196, 200, cert. denied, 502 U.S. 902 (1991).  The trial

court has the "opportunity to observe each juror's demeanor when

evaluating the juror's responses to the questions of counsel and

the questions of the trial court."  Id. at 200, 402 S.E.2d at

200.  "Any reasonable doubt regarding the prospective juror's

ability to give the accused a fair and impartial trial must be

resolved in favor of the accused."  Gosling v. Commonwealth, 7

Va. App. 642, 645, 376 S.E.2d 541, 544 (1989) (citations

omitted).

It is irrelevant whether counsel uses a peremptory strike to

remove a juror who should have been stricken for cause by the

court.  See Scott v. Commonwealth, 1 Va. App. 447, 450, 339

S.E.2d 899, 900 (1986).  "[I]t is prejudicial error . . . to

force a defendant to use the peremptory strike . . . to exclude a

venireman who is not free from exception."  Id. at 451, 339

S.E.2d at 900-01 (citation omitted).

### A.   PROSPECTIVE JUROR NO. 1

During voir dire, Brown's counsel moved to strike

Prospective Juror No. 1 for cause.  Prospective Juror No. 1

stated that she had been a victim of an attempted abduction and a

possible attempted sexual assault and that the suspect in her

case was never found.  The following exchange then took place

between the Commonwealth's attorney and Prospective Juror No. 1:

> [COMMONWEALTH'S ATTORNEY]:  Okay.  Is there
> anything about your experience -- some of the
> charges today, as you've heard, are sexual
> offenses and an abduction -- is there
> anything about your experiences having been a

victim of a similar crime and making a report to the police that would give you a bias in this case either for or against?

[PROSPECTIVE JUROR NO. 1]:  I don't honestly know.  I would hope not.

[COMMONWEALTH'S ATTORNEY]:  You would keep an open mind and decide the case based solely on the evidence that you hear today?

[PROSPECTIVE JUROR NO. 1]:  We would all try to do that.

[COMMONWEALTH'S ATTORNEY]:  Thank you.

At the close of the initial voir dire, Brown's counsel moved to strike Prospective Juror No. 1 for cause.  The court then conducted additional voir dire of Prospective Juror No. 1.  The following colloquy took place:

THE COURT:  Okay.  Now, [Prospective Juror No. 1], the way I understand it, you feel like you were the subject of an attempted abduction; is that correct?

[PROSPECTIVE JUROR NO. 1]:  Yes, Your Honor.

THE COURT:  Okay.  Now, in responding to questions of counsel as to whether or not you would be able to hear this case fairly on the evidence that's presented and the law that I give you, your answer was that you hope so and that you hope everybody would do the same thing.  That's just not good enough.

We need to know either you can or you can't.

[PROSPECTIVE JUROR NO. 1]:  Well, I'm trying to give you an honest answer, your Honor, because I haven't served in that situation before on a jury.  So I can only -- I can only be hypothetical.  I think that I would be fair as a juror.  That's the best that I can respond.

THE COURT:  But you're not sure?

- 4 -

[PROSPECTIVE JUROR NO. 1]:  I -- I -- I don't see how I could -- I mean I'm not clairvoyant. I think so.

THE COURT:  Well, you know yourself.  All I'm trying to find out is if you're chosen for the jury and you go back in there, are you going to let this business about the abduction come in between you and facts of this case.

[PROSPECTIVE JUROR NO. 1]:  I have no reason to believe it would influence.  I'm sure --

The Commonwealth's attorney then questioned Prospective Juror No. 1 again and the following exchange occurred:

[COMMONWEALTH'S ATTORNEY]:  Just to clarify, I think the Court's last question sort of gets to it.  You're going to hear evidence today. You're going to be instructed as to the law, and then you're going to go back and deliberate, and in your deliberations of course, you're instructed to only consider the evidence that's introduced today at trial, and would you be able to decide this case considering only that evidence and completely putting out of your mind any personal experience you may have had in an attempted abduction or attempted sexual assault.

[PROSPECTIVE JUROR NO. 1]:  I don't know how to answer other than I have -- I think that I would.  I would do my best to.  I mean I've never been in that situation before.  When it's a question of unpleasant memories impinging on one's -- one's intuitive feelings, there may be feelings there that would not influence me, but there might be feelings there nonetheless.

I would hope that I would do my duty and really look at the evidence.

[COMMONWEALTH'S ATTORNEY]:  Do you feel sitting here right now that the personal experience biases you against the Defendant

in this case, that you bring that into the case with you?

[PROSPECTIVE JUROR NO. 1]: No, ma'am.

Brown's counsel then conducted the following inquiry:

[DEFENSE COUNSEL]: [Prospective Juror No. 1] . . . [y]ou had said that as a result of your -- as a result of what you experienced that there were some unpleasant memories, and just to clarify, you were concerned that if you heard certain facts in this case -- and of course, you don't know what they are -- but if you heard certain facts that, for instance, may sound similar to the experience you had, that then those memories could intrude, which would be understandable . . . .

[PROSPECTIVE JUROR NO. 1]: I would hope that even if there were unpleasant connotations, that that would not interfere with my judgment to go by the evidence.

[DEFENSE COUNSEL]: Okay.

[PROSPECTIVE JUROR NO. 1]: Jury duty is public service. It's not entertainment. It's here to do your duty.

[DEFENSE COUNSEL]: It is, absolutely, and in an attempt to bring it -- to sort of ground it a little bit, having heard all of these charges and all of this talk, can you still look over at Ron Brown and figure there's an innocent man? Haven't heard anything from the Commonwealth yet. There sits an innocent man.

[PROSPECTIVE JUROR NO. 1]: Absolutely.

[DEFENSE COUNSEL]: Okay.

The court stated that it was satisfied with Prospective Juror No. 1's responses and overruled Brown's motion to strike her for cause.

- 6 -

To guarantee compliance with the United States and Virginia Constitutions,

> [a prospective juror] must be able to give [the accused] a fair and impartial trial. Upon this point nothing should be left to inference or doubt.  All the tests applied by the courts, all the enquiries made into the state of the juror's mind, are merely to ascertain whether he comes to the trial free from partiality and prejudice.
>
> If there be a reasonable doubt whether the juror possess these qualifications, that doubt is sufficient to insure his exclusion. For . . . it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible.

Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976) (citation omitted).  In Clements v. Commonwealth, 21 Va. App. 386, 464 S.E.2d 534 (1995), we reversed the defendant's conviction of attempted forcible sodomy, holding that the trial court erred in refusing to strike for cause a juror whose responses in voir dire revealed "reasonable doubt" about his impartiality.  Id. at 393, 464 S.E.2d at 537.  The prospective juror in Clements admitted that he had heard something about the case "together with the fact that a relative had been the victim of a sex crime" which would cause him "some sort of slight predisposition against people who are charged with sexual offenses."  Id. at 393, 464 S.E.2d at 537-38.

In Clements, the prospective juror "throughout his voir dire, . . . spoke honestly, showing no unwillingness to serve. However, those honest answers disclosed his equivocation and

revealed doubt that he would be able to render a fair verdict."
Id. at 393, 464 S.E.2d at 538.  Although the court and the
Commonwealth both attempted to rehabilitate the juror, "[i]n our
review, we must consider the entire voir dire rather than its
isolated parts."  Id. at 392-93, 464 S.E.2d at 537.  We held that
"the admissions created a reasonable doubt that [the juror] would
come indifferent to the cause," and we reversed and remanded the
case.  Id. at 393, 464 S.E.2d at 538.

    We reached a similar holding in Moten v. Commonwealth, 14
Va. App. 956, 420 S.E.2d 250 (1992).  In Moten, the trial court
refused to strike for cause a prospective juror in a trial for
multiple indictments of possession and distribution of cocaine.
During voir dire, the Commonwealth's attorney asked whether
charges of possession and distribution of cocaine "caused a
problem with anyone."  One prospective juror admitted that her
husband was "a recovering drug addict" and that she considered
drugs to be a "touchy" subject.  Id. at 957, 420 S.E.2d at 251.
Although she then stated that her experiences would not prohibit
her from acting impartially in this case, we held that the trial
court erred in refusing to strike her for cause.  We reversed the
defendant's convictions, stating that, although "[a] trial
court's ruling will not be disturbed unless there is a showing of
manifest error," the prospective juror's responses "clearly
indicated to the court that due to her husband's drug problem,
her performance as a juror might be impaired by her personal
feelings regarding drugs."  Id. at 958, 420 S.E.2d at 252.

- 8 -

Here, Prospective Juror No. 1 expressed numerous reservations about her ability to serve impartially on the jury in light of her personal experiences. Nearly all of Prospective Juror No. 1's responses contained the phrases, "I think," "I don't know," and "I would try." Her responses indicated a great degree of equivocation and created reasonable doubt about her fitness as a juror. Because all doubts about the fitness of a juror to serve must be resolved in favor of the accused, we hold that the court erred in refusing to strike Prospective Juror No. 1 for cause. See Gosling, 7 Va. App. at 645, 376 S.E.2d at 544.

### B.  PROSPECTIVE JUROR NO. 2

Brown also moved to strike Prospective Juror No. 2 for cause. Prospective Juror No. 2 stated during voir dire that he was Chief Counsel to the United States Secret Service. When Brown's counsel asked whether any venire member would agree with the statement that, "[a] rape charge wouldn't be brought by a woman that wasn't true," Prospective Juror No. 2 stated, "I don't agree with that statement, but I in honesty should say that my whole career has been in law enforcement. So I do tend to view things from the law enforcement perspective." He also stated twice that he "had a great deal of faith" in law enforcement officers and prosecutors and that, as a result, he might give more weight to an officer's testimony.

Prospective Juror No. 2 asserted that although he did not believe a defendant is always guilty, he admitted,

> I think it's a fair statement, and I do feel
> that it would be unusual that the police
> would make an arrest, that there would be an
> indictment, and that it would get all the way
> to trial -- the great likelihood, based on my
> experience, is, yes, the person probably did
> it.

Prospective Juror No. 2 stated, however, that he could "listen to the particular individual trial."  The trial judge denied Brown's motion to strike Prospective Juror No. 2 for cause, stating that Prospective Juror No. 2 would do "proper service in the case."

In David v. Commonwealth, 26 Va. App. 77, 493 S.E.2d 379 (1997), we held that the trial court abused its discretion in refusing to strike a prospective juror for cause.  In David, a prospective juror stated that she had some friends in a local county police department and that she had been the victim of two unrelated crimes.  She stated, "I can sit impartially, but I would probably tend to prosecute to the max because of my experiences."  Id. at 79, 493 S.E.2d at 380.  She then indicated that "as a victim among other things" she would be more likely to listen to the prosecution's case.  The court then conducted an individual colloquy with the prospective juror in an attempt to rehabilitate her as a member of the jury panel.  We reversed and remanded for a new trial, stating,

> [t]he true test of impartiality lies in the
> juror's mental attitude.  Furthermore, proof
> that she is impartial must come from her
> uninfluenced by persuasion or coercion.  The
> evidence used to show the requisite
> qualifications must emanate from the juror

> herself, unsuggested by leading questions
> posed to her.

Id. at 81, 493 S.E.2d at 381 (citations omitted).

In Breeden, 217 Va. 297, 227 S.E.2d 734, the Supreme Court of Virginia reversed and remanded the defendant's conviction of abduction and murder, holding that a prospective juror should have been dismissed for cause from the venire. In Breeden, a prospective juror admitted that she had read about the crime in the newspaper and was "glad that the person was caught." Id. at 299 n.*, 227 S.E.2d at 736 n.*. She also stated that "[i]n my mind there must have been strong evidence to be arrested," and agreed that "the fact that [the defendant] is here is strong indication that he is guilty." Id. She asserted her belief that the defendant would have to prove his innocence, rather than requiring the Commonwealth to prove his guilt. See id. Although the prospective juror stated that she could follow the judge's instructions in applying the facts to the law, the Supreme Court held that it was error for the trial court to have refused to strike her for cause.

Here, Prospective Juror No. 2's position as Chief Counsel to the United States Secret Service does not alone disqualify him from jury service. See Gray v. Commonwealth, 233 Va. 313, 338, 356 S.E.2d 157, 171 (1987) (association with law enforcement personnel is alone insufficient to strike a prospective juror for cause). However, his admission that he usually "view[ed] things from a law enforcement perspective," and his belief that it was

unlikely that a case would go to trial if the accused was not guilty created a reasonable doubt about his ability to sit impartially on a jury. All reasonable doubts must be resolved in favor of the accused. See Gosling, 7 Va. App. at 645, 376 S.E.2d at 544. The trial court, therefore, erred in refusing to strike for cause Prospective Juror No. 2.

### C. PROSPECTIVE JUROR NO. 3

Brown moved to strike Prospective Juror No. 3 for cause. The trial judge asked whether any of the jurors knew Brown or either counsel. Prospective Juror No. 3 stated that she knew the appellant "from the area," but not as a friend, acquaintance, or relation. She stated that her knowledge of Brown would not interfere with her ability to give him and the Commonwealth a fair trial. Brown's counsel moved to strike Prospective Juror No. 3 for cause on the ground that because she knew Brown "from the area" and "he has a very long criminal record . . . she would be introducing that to the jury room." The court, however, denied the motion to strike for cause. On appeal, Brown's counsel objects both to the court's refusal to strike Prospective Juror No. 3 for cause and the court's failure to conduct any voir dire to ascertain Prospective Juror No. 3's level of knowledge about Brown's past. Brown also argues that the court's error was not cured by the Commonwealth's removal of Prospective Juror No. 3 with its fourth peremptory strike.

In a prior case, we held that a trial court did not err as a matter of law in refusing to strike two prospective jurors who

stated during voir dire that they had read in the newspaper about the defendant's prior trial. See Foster v. Commonwealth, 6 Va. App. 313, 369 S.E.2d 688 (1988). In Foster, two of the prospective jurors remembered details from a previous trial involving the defendant taking pictures of nude children. We held that because the jurors stated they did not know the outcome of the first trial and could "set aside their knowledge and decide the case on the evidence presented at trial" the court was not plainly wrong in refusing to strike either juror for cause. Id. at 330-31, 369 S.E.2d at 699. Rather, we held that the trial court's finding is "entitled to great weight and should be set aside only for plain error." Id. at 330, 369 S.E.2d at 698 (citations omitted).

Here, Prospective Juror No. 3 did not state that she had any knowledge of Brown's alleged criminal history, nor did she state that she had heard rumors about him in the neighborhood. Prospective Juror No. 3's admission that she knew Brown "from the area" is not alone sufficient to disqualify her from jury service. Prospective Juror No. 3 stated that her knowledge of Brown would not prohibit her from giving him a fair trial, and any speculation concerning what she knew about Brown is not supported by Prospective Juror No. 3's answers. Her knowledge of Brown, as revealed in voir dire, falls far short of the information disclosed by the prospective jurors in Foster, in which we upheld the court's refusal to strike for cause.

Brown also argues that the court erred when it failed to conduct additional voir dire of Prospective Juror No. 3 to determine the extent of her knowledge of Brown's criminal history or rumors of criminal activity. However, Brown's counsel neither asked these questions nor requested that the court do so.

Brown correctly asserts that the Commonwealth's use of its fourth peremptory strike to remove Prospective Juror No. 3 does not cure any prejudice caused to him. A Commonwealth's attorney's use of a peremptory challenge to remove a prospective juror who should have been stricken for cause will not cure any possible prejudice caused to an accused. See Brooks v. Commonwealth, 24 Va. App. 523, 530-31, 484 S.E.2d 127, 130 (1997); DeHart v. Commonwealth, 20 Va. App. 213, 216, 456 S.E.2d 133, 134 (1995). "[A] defendant [is] entitled to a jury panel free from exception." Brooks, 24 Va. App. at 530, 484 S.E.2d at 130. If a venireman who should have been removed for cause is allowed to remain on the jury panel, the accused is "denied the opportunity of having another impartial person on his jury." Id. at 530, 484 S.E.2d at 130.

The Commonwealth's use of a peremptory challenge to remove Prospective Juror No. 3 would not have cured any prejudice to Brown if the juror should have been stricken for cause. On this record, we find that the trial court did not err in refusing to strike Prospective Juror No. 3 for cause.

Brown argues that the trial court improperly limited his cross-examination of Jane Doe.  Brown argues that Doe's statements to the police officer and her testimony at trial were very similar to testimony she gave in an unrelated rape trial in 1989, reported in Glymph v. Commonwealth, Record No. 1435-89-4 (Va. Ct. App. June 18, 1991).  Brown sought to question Doe about her testimony in Glymph.  The Commonwealth argued that this type of questioning was prohibited on the basis of Code § 18.2-67.7 ("rape shield" law).  The trial court agreed and refused to allow Brown's counsel to question her about it.

"In criminal prosecutions a man hath a right . . . to call for evidence in his favor."  Va. Const. art. I, § 8.  "The opportunity to present a complete defense 'would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . credibility . . . when such evidence is central to the defendant's claim of innocence.'"  Brown v. Commonwealth, 22 Va. App. 316, 322, 469 S.E.2d 90, 93 (1996) (citation omitted).  "Combined, the rights to compulsory process, confrontation and due process give the defendant a constitutional right to present evidence."  Id. at 322, 469 S.E.2d at 93 (citing Neeley v. Commonwealth, 17 Va. App. 349, 356, 437 S.E.2d 721, 725 (1993)).

Code § 18.2-67.7, referred to as the "rape shield" law, excludes evidence in sexual assault cases,

of the "general reputation . . . of the complaining witness's unchaste character or prior sexual conduct" . . . [which is] defined as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article."

Clinebell v. Commonwealth, 235 Va. 319, 322, 368 S.E.2d 263, 264 (1988). The "rape shield" law requires a defendant seeking to introduce evidence of a victim's prior sexual conduct to request an evidentiary hearing before such evidence can be elicited at trial. Code § 18.2-67.7(C). The Commonwealth contends that any testimony given by Jane Doe in a prior reported rape case necessarily constitutes evidence of "prior sexual conduct." On the ground that Brown failed to request an evidentiary hearing prior to trial to determine admissibility of Doe's prior testimony, the Commonwealth also argues that the trial court properly refused to allow such questioning.

In Clinebell, the defendant was convicted of five counts of sexual misconduct involving his daughter. He appealed, arguing that under the "rape shield" law the court had improperly excluded evidence of certain prior statements made by his daughter. The daughter's statements included various references she made to a classmate that she was pregnant, that her father and her uncle had raped her, that another boy had impregnated her, and that her paternal grandfather had molested her. See id. at 321-22, 368 S.E.2d at 264. The defendant argued that by introducing her statements, he was not attempting to prove that

his daughter "has engaged in 'prior sexual conduct' or that she has unchaste character." Id. at 322, 368 S.E.2d at 264. Reversing the convictions, the Supreme Court of Virginia stated: "He seeks to prove for impeachment purposes that his daughter makes false statements concerning sexual behavior. We conclude that such statements are not 'conduct' within the meaning of Code § 18.2-67.7." Id. at 322, 368 S.E.2d at 264.

Brown also cites State v. Lampley, 859 S.W.2d 909 (Mo. Ct. App. 1993), in which the Missouri Court of Appeals reversed the defendant's convictions for two counts of sodomy involving his stepdaughter, holding that the trial court erred in refusing to allow him to cross-examine her about a previous complaint of sexual abuse by another person. Missouri has enacted a statute, codified at Mo. Rev. Stat § 491.015 (1986), which is intended to protect a victim in a rape prosecution from being questioned about prior sexual conduct. Brown argues that the legislative intent and the language of the Missouri statute are substantially similar to Code § 18.2-67.7, and, therefore, that Missouri law is instructive in this case.[1]

In Lampley, the defendant argued that the stepdaughter's previous complaint of sexual abuse was relevant to show "previous

---

[1]The relevant language of § 491.015 begins, "[i]n prosecutions . . . related to sexual conduct . . . opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible. . . ."
    Code § 18.2-67.7 similarly begins, "[i]n prosecutions under this article, general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted . . . ."

knowledge of sexual matters and how she benefited [sic] from the prior complaint." Id. at 910. The evidence showed that the prior abuse complaint resulted in removal of the subject of the complaint from the stepdaughter's house. See id. at 911. The defendant argued that the stepdaughter did not like him and "accusing him of sexual molestation was a way of getting him out of her home." Id. Therefore, the defendant argued that he should have been allowed to question his stepdaughter about the prior complaint to determine if she had any possible motive to fabricate the complaint against him. See id.

The Missouri Court of Appeals reversed his convictions, holding that the defendant "never indicated an intention to go into prior sexual conduct . . . [and it was] not the stated subject of cross-examination." Id. The court held that a limited inquiry about the prior complaint would have been permissible if it was confined to "show motive to fabricate and never implicate [the statute]." Id. at 912. Therefore, "the trial court view that reference to the prior incident is 'totally irrelevant' is patently wrong." Id. at 912.

Evidence which "tends to cast any light upon the subject of inquiry is relevant." Rader v. Commonwealth, 15 Va. App. 325, 331, 423 S.E.2d 207, 211 (1992) (citations omitted). "Relevant evidence 'which has the tendency to add force and effect to a party's defense is admissible, unless excluded by a specific rule or policy consideration.'" Evans v. Commonwealth, 14 Va. App. 118, 122, 415 S.E.2d 851, 853-54 (1992) (citations omitted). In

Evans, we held that the trial court erred in excluding evidence that the complaining witness had contracted a venereal disease and that she had knowledge of the disease.  In reversing the defendant's conviction for rape, we held,

> Code § 18.2-67.7 . . . does not exclude the type of evidence which Evans offered.  Code § 18.2-67.7 narrowly limits the admissibility of relevant "evidence of specific instances of [the complaining witness's] prior sexual conduct" to very carefully delineated situations.  Consequently, where relevant evidence of the complaining witness's prior sexual conduct does not fit within the specific exceptions set forth in the statute, it is not admissible.  However, where relevant evidence is not of prior sexual "conduct," Code § 18.2-67.7 does not apply.

Id. at 122-23, 415 S.E.2d at 854 (citations omitted).

Jane Doe's testimony in this case bore many striking similarities to her earlier testimony in Glymph.  In both cases, Doe claimed that she did not know her attacker prior to the day of each incident.  In both cases, Doe drove each man around in her own automobile and admittedly spent time talking with each.  She also testified that she voluntarily consumed alcoholic beverages and socialized with each man prior to the alleged attacks.  In each case, Doe stated that she requested and was permitted to go to the bathroom after each man had started to molest her.  Such substantial similarities may suggest fabrication.

We hold that the evidence of Doe's testimony in Glymph does not fall within the definition of "prior sexual conduct" set out in Code § 18.2-67.7.  Brown did not seek to introduce evidence of

any sexual acts in which Doe was involved.  Neither did Brown seek to introduce a prior false statement made by Doe regarding previous sexual behavior.  See Clinebell, 235 Va. 319, 368 S.E.2d 263.

Brown's counsel sought to question Doe about prior testimony, not her prior conduct.  Furthermore, the testimony sought was not about sexual conduct.  Brown's counsel asked Doe questions relating to what allegedly occurred between Brown and Doe prior to any possible sexual conduct.  After Doe responded to these questions, Brown's counsel attempted to ask Doe if what she described constituted "a striking[ly] similar story to the story you told in a rape case in 1989--."  The Commonwealth objected to this question, citing the "rape shield" law.  The court sustained the objection.  The similarities between Doe's prior testimony and her testimony in this case could have affected her credibility and evidenced possible fabrication of her testimony in this case.

Evidence of prior testimony in an unrelated rape prosecution, when offered to show its substantial similarity for the purpose of testing the credibility of the witness, does not fall within the scope of Code § 18.2-67.7.  Therefore, the trial court erred in refusing to allow Brown to question Doe about her prior testimony.

For the reasons stated herein, we reverse and remand the case for retrial if the Commonwealth be so advised.

Reversed and remanded.