COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Humphreys and Clements
Argued at Salem, Virginia


DANIEL LATTRELL BLACKMON
                                              OPINION BY
v.   Record No. 2325-99-3        JUDGE ROBERT J. HUMPHREYS
                                            NOVEMBER 14, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                      Ray W. Grubbs, Judge

          Richard W. Davis, Jr. (Davis, Davis & Davis,
          on brief), for appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Daniel Lattrell Blackmon was convicted by a jury of

abduction and rape. On appeal, Blackmon contends the trial court

erred when it denied him a "Rape Shield Hearing" to determine the

admissibility of certain evidence.

                        I.  BACKGROUND

     On November 19, 1998, Blackmon and Curtis Lee Martin went to

the Terrace View Apartments in Blacksburg to obtain marijuana

from an apartment tenant. When they arrived, they burst into an

apartment and began yelling for "Rob," saying he had their

marijuana. Blackmon and Martin told the several people who were

in the apartment that they had a gun and would shoot if the

individuals did not cooperate with them. An argument ensued.

While the argument continued, Blackmon went to the couch, where Nisa McCarter was sitting. Blackmon began to forcibly kiss McCarter, despite the fact that she tried to push him away. He then pulled McCarter into a hallway closet and closed the door. Martin joined the two in the closet shortly thereafter. Martin and Blackmon held the door closed as they held McCarter, pulled off her jeans and tore off her underwear.

A few moments later, someone in the apartment yelled that the police were coming. Martin and Blackmon then left the closet.

McCarter pulled on her jeans and went into a nearby bedroom with a friend, Alicia Neuman. As Neuman was attempting to lock the bedroom door, Blackmon pushed his way in, grabbed Neuman by the face and pushed her into the hallway. He then shut and locked the bedroom door behind him, pushed McCarter to the bed, pulled off her jeans, and pulled his own pants down around his ankles. He "put his penis into [her] vagina . . . for a few seconds," before the occupants in the apartment began to bang on the door and eventually broke into the room. Blackmon then pulled up his pants and left the apartment. He was apprehended by the police as he was leaving the apartment building.

Both Blackmon and McCarter were later tested at Montgomery County Regional Hospital. The examination of McCarter revealed no semen present in her vagina, but semen was found on her inner thigh. The DNA in the semen was found to be consistent with Blackmon's DNA.

- 2 -

During a preliminary hearing, Blackmon attempted to question McCarter about her past sexual history. The Commonwealth objected to the question, arguing that the preliminary hearing was not a "Rape Shield Hearing." The trial court sustained the objection.

Six days before trial, Blackmon served notice of his request for a Rape Shield Hearing pursuant to Code § 18.2-67.7. In the notice, Blackmon contended that he "need[ed] to question the alleged victim, outside the hearing of the jury, to determine whether the DNA found on her person could have come from another source," and asked the court to then rule on the admissibility of this evidence for purposes of trial.

During a hearing to determine if Blackmon's request would be granted, he argued the following:

> I will ask the Court to allow me outside the
> hearing of the jury . . . [to] ask her is
> there any chance that the presence of semen
> on her leg came from another
> source. . . . [I]f the answer is yes, then I
> believe it is something that I'm allowed to
> go into . . . . If her answer is no Mr.
> Davis I swear under oath that I, there's no
> other possibility where that came from then I
> think . . . I will move on . . . .

The prosecutor objected to the motion as a "fishing expedition," and explained that, based on the DNA results, "the probability of it being someone other than Mr. Blackmon was [one in] 1.4 billion in the black population. It also says 2.9 billion in the Caucasian population, and one in 5.5 billion in the Hispanic population."

The trial court took the motion under advisement and just before trial, denied the request, stating, "in light of the DNA evidence that has been proffered by the Commonwealth, it would appear to me that your inquiry would not be relevant to the issues that will be confronted within this case."

## II.  ANALYSIS

On appeal, Blackmon argues that the trial court erred in denying his motion for a Rape Shield Hearing, and by doing so, violated his Sixth Amendment right to confront witnesses, as well as his right to due process.

Virginia's Rape Shield statute, Code § 18.2-67.7, provides the following, in pertinent part:

> A.  In prosecutions under this article . . . evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted.  Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:
>
> 1.  Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts; or
>
> *    *    *    *    *    *    *
>
> C.  Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that evidence at an evidentiary hearing to be held before the

- 4 -

            evidence is introduced at such preliminary
            hearing or trial . . . .

(Emphasis added.)

       We have interpreted the Rape Shield statute to "[require] a
defendant seeking to introduce evidence of a victim's prior
sexual conduct to request an evidentiary hearing before such
evidence can be elicited at trial."  Brown v. Commonwealth, 29
Va. App. 199, 213, 510 S.E.2d 751, 758 (1999) (citing Code
§ 18.2-67.7(C)).  However, the issue of whether a trial court
must hold an evidentiary hearing, in response to a party's
request, is a question of first impression.

       Blackmon contended during the hearing that "the rape shield
statute provides that I need to give notice to the Court for a
hearing if I wish to question her on [whether] someone else could
have left the sperm on her thigh, and it makes sense in a rape
shield hearing."  Blackmon misunderstands the purpose and meaning
of the Rape Shield statute.

       "Where the language of a statute is clear and unambiguous,
we are bound by the plain statement of legislative intent.  We
must 'take the words as written' . . . and give them their plain
meaning."  Adkins v. Commonwealth, 27 Va. App. 166, 169, 497
S.E.2d 896, 897 (1998) (citation omitted).  The plain and
unambiguous language of Code § 18.2-67.7 does not require a trial
court to hold an evidentiary hearing on every request.  Instead,
the statute merely requires that a trial court hold a hearing

- 5 -

before admitting evidence of specific instances of prior unchaste character or sexual conduct.

Furthermore, in both his motion for a Rape Shield Hearing, as well as his argument at the hearing on the motion, Blackmon failed to proffer any testimony or evidence which he intended to elicit from McCarter concerning prior sexual conduct. Instead, he merely requested that the trial court allow him to question McCarter, under oath, in order to discover <u>potential</u> exculpatory evidence pertaining to the source of the semen on McCarter's thigh.

Code § 18.2-67.7 plainly states that "[u]nless the complaining witness voluntarily agrees otherwise, evidence of <u>specific</u> <u>instances</u> of his or her <u>prior</u> sexual conduct shall be admitted only if it is relevant" and falls within the enumerated exceptions. (Emphasis added.) We emphasize the words "specific instances" and "prior" because, by their very nature, these words demonstrate that the legislature intended this statute to provide a mechanism for preventing the use of an alleged sexual assault victim's sexual history, pre-dating the offense, from reaching the ears of the fact finder, when such evidence has no relevance or probative value beyond calling into question the chastity of the complaining witness. It logically follows that a trial court can make a threshold evaluation of a motion to hold a hearing to determine the "admissibility" of the evidence at issue based upon its relevance and probative value only after "specific instances"

- 6 -

of sexual conduct occurring prior to the charged offense have been alleged and proffered.  See Code § 18.2-67.7(C).

In his motion, Blackmon failed to proffer any specific sexual conduct occurring on any occasion prior to the offense. Moreover, Blackmon's stated reason for requesting the hearing was to explore "an alternative explanation for the presence [of semen]."  The court did not prevent Blackmon from cross-examining McCarter, during the preliminary hearing or at trial, concerning her explanation for the presence of semen at the time of the alleged offense.

Under these circumstances, we find that the trial court correctly denied Blackmon's request for a Rape Shield Hearing. Code § 18.2-67.7 does not mandate that a trial court hold a hearing on every request, nor does it require a trial court to hold a hearing for a reason outside the express purpose of the statute.

Finally, as to Blackmon's constitutional arguments, we note that a "defendant does not have a general constitutional right to discovery in a criminal case." Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996).  However, we do not address these issues further, because Blackmon failed to raise these arguments before the trial court.  See Swann v. Commonwealth, 247 Va. App. 222, 441 S.E.2d 195 (1994).

Affirmed.