COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Russell and Malveaux
Argued by videoconference


TYRON RESHAWN CLANTON

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1809-19-2            JUDGE MARY BENNETT MALVEAUX
                                                      MAY 4, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Mary K. Martin (Mary K. Martin, Attorney at Law, PLLC, on brief),
for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Tyron Reshawn Clanton ("appellant") was convicted of two counts of first-degree murder,

in violation of Code § 18.2-32, two counts of use of a firearm in the commission of first-degree

murder, in violation of Code § 18.2-53.1, and one count of conspiracy to commit first-degree

murder, in violation of Code §§ 18.2-22 and -32. On appeal, he argues that the trial court erred in

failing to strike Jurors 15 and 23 for cause. Because we find that the trial court erred in failing to

strike Juror 23 for cause, we reverse appellant's convictions and remand for a new trial.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In light of our resolution of the appeal on this ground, we need not address appellant's argument regarding Juror 15. See Riddick v. Commonwealth, 72 Va. App. 132, 146 n.7 (2020) ("[J]udicial restraint dictates that [appellate courts] decide cases on the best and narrowest grounds available." (quoting Commonwealth v. White, 293 Va. 411, 419 (2017))).

# I. BACKGROUND

On June 13, 2019, the trial court conducted jury selection for appellant's trial. The trial court asked several preliminary questions of the venire. The Commonwealth's attorney then questioned the venire, collectively and individually. She asked if anyone was, or had a close friend who was, a member of law enforcement. Juror 23 responded that her deceased sister had worked for the police department. When the Commonwealth's attorney introduced the Commonwealth's witnesses in the case, Juror 23 stated that she knew several of the police officers that were going to testify because of her sister's former employment with the police department. The trial court then asked the following questions:

> THE COURT: Well, would that prevent you from being fair to either the Commonwealth or the defendant? The officers are witnesses to the -- they're going to testify about what they saw or what they did. That's what their role is.
>
> [JUROR 23]: I mean, I guess not. No.
>
> THE COURT: No. The fact that your -- you said your sister was a police officer?
>
> [JUROR 23]: She worked for the police department.
>
> THE COURT: Worked for the police officer (*sic*). Would that prevent you from being fair to either the Commonwealth or the defendant? I mean, when there's a crime, the police investigate it.
>
> [JUROR 23]: I know.
>
> THE COURT: So they're involved.
>
> [JUROR 23]: I'm -- I'm, you know, kind of, I guess -- like, I guess I would say loyal to the police because of my sister's work that she did, I guess. But I hope that wouldn't keep me from being impartial with the evidence that we have. I'm biased --
>
> THE COURT: Okay.
>
> [JUROR 23]: -- you know, on the police side, I guess you would say.

The Commonwealth's attorney then named more witnesses that she would call to testify, and Juror 23 again stated that she knew several of them because her sister had been "close friends" with a couple of the detectives named as witnesses. The Commonwealth's attorney asked a further question of Juror 23:

> COMMONWEALTH'S ATTORNEY: Based on your sister's closeness, do you feel you could be fair and impartial to both sides, after you hear all the evidence today?
>
> JUROR 23: I'll try to be. Like I said, I'm loyal to the police chief. Worked for years and knew them and I'm loyal to the police. I don't know what else to say, but I would try to be.

The Commonwealth's attorney then moved to strike Juror 23 for cause based on the juror's "testimony[] which has been consistent through every time there's a police officer that comes forward." Counsel for appellant joined in that motion. The court further questioned Juror 23 as follows:

> THE COURT: Okay. So your position -- so after you hear all the evidence in this court and you hear the law that I instruct you on, can you put aside any feelings that you have about the loyalty or credibility of police officers and follow the law that I instruct you on, based upon the evidence that you hear in this courtroom?
>
> JUROR 23: I will try.
>
> THE COURT: You will try. So you're saying you're -- okay. Have a seat. Motion for [c]ause is denied. Sit down. She said she will try, she didn't say no.

Counsel for appellant then questioned Juror 23 as follows:

> [DEFENSE COUNSEL]: So sorry, Madam 23, to keep asking you questions, but you told the [j]udge that you would try and I guess I'm just trying to interpret that you can't -- you can't assure us that you can go into the room and --
>
> [JUROR 23]: I have a lot of emotion toward those police officers. They were very kind to my sister. My sister passed away three months ago. I'm still dealing with that. My mill of emotion when I see those officers is very high and I'm being honest.

[DEFENSE COUNSEL]: Yes, ma'am. I understand. So you're telling us then for that reason you just cannot guarantee the [c]ourt that you can follow the instructions of the [c]ourt, put aside any of your special feelings that you might have, you're not going to be able to do that?

[JUROR 23]: I don't want to do a disservice to anybody.

[DEFENSE COUNSEL]: So that you're concerned about doing a disservice?

[JUROR 23]: Yes.

[DEFENSE COUNSEL]: All right. Thank you, ma'am. I really appreciate your answers.

Following this exchange, counsel for appellant renewed the motion to strike Juror 23, which the court denied. Appellant used a peremptory strike to remove Juror 23. The jury found appellant guilty of two counts of first-degree murder, two counts of use of a firearm in the commission of first-degree murder, and one count of conspiracy to commit first-degree murder. This appeal followed.

## II. ANALYSIS

Both the Virginia and United States Constitutions protect a defendant's right to be tried by an impartial jury. Va. Const. art. I, § 8; U.S. Const. amend. VI; see also Code § 8.01-358 (providing that members of the venire must "stand indifferent in the cause"). "[A] prospective juror 'must be able to give [the accused] a fair and impartial trial. Upon this point nothing should be left to inference or doubt.'" Bradbury v. Commonwealth, 40 Va. App. 176, 180 (2003) (second alteration in original) (quoting Wright v. Commonwealth, 73 Va. (32 Gratt.) 941, 943 (1879)). "[T]he test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." Griffin v. Commonwealth, 19 Va. App. 619, 621 (1995). "[T]he Constitution does not require specific procedures or tests for determining the impartiality of a jury." Morva v.

Commonwealth, 278 Va. 329, 341 (2009).  However, "[b]y ancient rule, any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused."[2]  Breeden v. Commonwealth, 217 Va. 297, 298 (1976).

"Juror impartiality is a question of fact."  Huguely v. Commonwealth, 63 Va. App. 92, 121 (2014) (quoting Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 61 (2011)).  "Whether a venireman can lay aside a preconceived opinion and render a verdict solely on the evidence is a mixed question of law and fact.  Resolution of the question rests within the sound discretion of the trial court."  Calhoun v. Commonwealth, 226 Va. 256, 258 (1983).  We review "[j]urors' responses during the entire *voir dire* . . . to determine their impartiality to the case."  Bradbury, 40 Va. App. at 180.

Appellant argues that the trial court erred in failing to strike Juror 23 for cause because her answers given during *voir dire* demonstrated her bias in favor of police.[3]  It is true that in Virginia "[a] person is not automatically excluded from a jury because of an association with law enforcement personnel, provided he demonstrates that he can be impartial."  Gray v.

---

[2] Though Juror 23 was ultimately removed via a peremptory strike, "[i]n Virginia, a defendant in a criminal case 'is entitled to a panel of jurors free from exception before exercising peremptory challenges.'"  DeLeon v. Commonwealth, 38 Va. App. 409, 412 (2002) (quoting Cressell v. Commonwealth, 32 Va. App. 744, 755 (2000)).

[3] The Commonwealth argues that appellant failed to preserve this argument for appeal because while appellant made a motion to strike the prospective juror, he never stated with any specificity why the juror should be struck for cause.  Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."  Under the rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal."  Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*).  We reject the Commonwealth's argument because it is readily apparent from the line of questioning during *voir dire* by the Commonwealth, along with its motion to strike, which appellant joined, that the trial court understood that the basis for the motion to strike was Juror 23's responses indicating that she had a potential bias in favor of police.

Commonwealth, 233 Va. 313, 338 (1987).  However, Juror 23's *voir dire*, viewed in its entirety, did not demonstrate that she could be impartial in this case.

During *voir dire*, Juror 23's own words, not just her mere assent to questioning, revealed her bias toward police.  The prospective juror directly stated, when asked about her impartiality, that she was "loyal to the police because of my sister's work that she did" and was "biased . . . you know, on the police side, I guess you would say."  She also responded that she did not "want to do a disservice to anybody" after being asked if she could follow the instructions of the court and put aside any "special feelings" she might have had.  It is beyond evident here that Juror 23's honest answers provided doubt as to her ability to remain impartial to both sides—the prospective juror herself stated that she was "loyal to" and "biased" in favor of police, and did not want to do a "disservice" by serving on the jury.

Further, beyond these direct statements, Juror 23's other responses to questions regarding her impartiality failed to establish that she could be impartial while serving on the jury.  When asked by the trial court if her relationship with police witnesses, whom she knew because her sister had worked for the police department, would prevent her from being fair to the Commonwealth or appellant, Juror 23 responded, "I mean, I guess not.  No."  When the trial court asked again if she could be impartial to both sides considering her sister's prior work, the prospective juror stated she "hope[d] that wouldn't keep [her] from being impartial."  Following this exchange, when asked by the Commonwealth's attorney if she could remain impartial despite her deceased sister's close relationships with police detectives who were witnesses for the Commonwealth, Juror 23 twice stated that she would "try to be."  After the Commonwealth moved to strike Juror 23 for cause, the trial court attempted to rehabilitate the prospective juror by asking, "can you put aside any feelings that you have about the loyalty or credibility of police

officers and follow the law that I instruct you on, based upon the evidence that you hear in this courtroom?" Juror 23 again responded, "I will try."

Here, only once did Juror 23 state that her deceased sister's relationship with the police department would not prevent her from being fair to either side, and even that answer was partially equivocal, as she answered, "I mean, I guess not. No." After this initial response, Juror 23 stated three times that she would "try" and "hope" to be fair and impartial. All of Juror 23's responses to the question of whether she could be impartial were equivocal in nature, and thus revealed doubt as to whether she would be able to render a fair verdict.[4] See Brown v. Commonwealth, 29 Va. App. 199, 208 (1999) (denying motion to strike juror in a rape case was error when "[n]early all" of the prospective juror's responses regarding bias and her past experience as a crime victim contained the phrases "I think," "I don't know," and "I would try").

In the instant case, Juror 23 expressed numerous reservations about her ability to serve impartially on the jury in light of her experience and relationships with police. Her direct statements regarding her loyalty and bias in favor of police, along with her equivocal answers that she would "try" and "hope" to be impartial, created a reasonable doubt as to Juror 23's qualification to serve as a fair and impartial juror. Therefore, we conclude that the trial court abused its discretion in refusing to strike her for cause.[5]

---

[4] We acknowledge that "we defer to the trial court to resolve any potentially equivocal statements because of its opportunity to observe the juror's tone and demeanor." Keepers v. Commonwealth, 72 Va. App. 17, 45 (2020). However, here the trial court did not indicate that it found Juror 23's responses unequivocal. Rather, in denying the motion to strike, the trial court stated, "She said she will try, she didn't say no." Further, even giving deference to the trial court's observations of the juror's tone and demeanor, we conclude that Juror 23's responses did not indicate that she could be impartial because they were coupled with her direct statements regarding her loyalty and bias in favor of police.

[5] The Commonwealth cites Keepers as factually similar and as support for its argument that Juror 23 did not display bias or prejudice toward appellant or the Commonwealth. We find Keepers clearly distinguishable. In Keepers, during *voir dire*, Juror 40 made certain equivocal statements regarding whether she could be fair and impartial and stated "I . . . cannot sit here and

III.  CONCLUSION

We hold that the trial court erred in denying the motion to strike Juror 23 for cause. Accordingly, we reverse appellant's convictions and remand the case for a new trial, should the Commonwealth be so advised.

Reversed and remanded.

honestly say that what I heard is not going to bias me." Id. at 31-32.  On appeal, our Court affirmed the trial court's decision to seat the juror.  Id. at 47.  In doing so, we noted that in addition to some equivocal statements, Juror 40 made a number of other statements which supported the trial court's conclusion that she could be fair and impartial, including the statement that she was not "just going to stick with [her] opinion" but would wait to hear the evidence and learn what . . . the law is."  Id. at 46-47 (alterations in original).  Here, in contrast, Juror 23's statements that were not equivocal in nature do not support the conclusion that she could be fair and impartial, as she pointedly said that she was "loyal" and "biased" in favor of police.