UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Malveaux
Argued at Fredericksburg, Virginia

RODOLFO BUSTOS

v.     Record No. 1880-18-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
DECEMBER 27, 2019

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Richard E. Gardiner, Judge

Kathryn C. Donoghue, Senior Assistant Public Defender, for
appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court of Fairfax County, Rodolfo Bustos was

convicted of two counts of forcible sodomy in violation of Code § 18.2-67.1 and three counts of

crimes against nature in violation of Code § 18.2-361. Bustos appeals his convictions arguing

that the trial court erred in denying his motion to strike a juror for cause and by granting, or

declining to add additional language to, the model geriatric parole instruction. For the following

reasons, we affirm the ruling of the trial court.

I. BACKGROUND

A. Voir Dire

Bustos was tried in a three-day jury trial. *Voir dire* began on the first day of trial with the

trial court explaining the charges and questioning the jurors. The trial court asked the jurors

standard questions about whether they understood that the defendant is presumed innocent, that

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth must prove the defendant's guilt beyond a reasonable doubt, and that the defendant is not required to produce any evidence. All of the prospective jurors answered affirmatively. All of the prospective jurors answered no when asked if they were "aware of any bias or prejudice" they might have for or against the Commonwealth or defendant. And all of the jurors affirmed that they understood that "the fact . . . that a person has been charged or accused by the Commonwealth is not evidence against him."

When the trial court was finished with its questions, the Commonwealth conducted its *voir dire*. The Commonwealth asked questions about the jurors' occupations, whether they could follow the instructions provided, and if they or someone close to them had personal experience with sexual abuse. The Commonwealth explained it was trying to ensure the jurors could be "fair and impartial" and asked a catchall question of whether anyone had thought of anything the Commonwealth needed to know that may hinder their impartiality or otherwise affect their ability to serve.

Bustos then had his turn to ask questions of the venire. His attorney introduced herself and stated that she had "the privilege of representing Rudolfo Bustos." She asked questions of individual jurors before asking if any of the jurors felt that "it's hard not to think that Mr. Bustos must have done something wrong?" Juror 8 raised her hand. Defense counsel asked how she was feeling, and Juror 8 responded,

> Well, I think a lot of it has to do with my background . . . as a teacher and dealing with several students in my past who have gone through, you know, similar situations and have been placed out of their homes in foster care and seeing what's happened to them as they become adults.
>
> And then sitting here, you know, thinking about all the instructions that we've had, knowing what we're charged with doing as a jury, when you stood up and said, "I have the privilege of representing [Bustos]" . . . something inside me just went, "privilege?"

- 2 -

. . . You know, and I didn't even realize I was thinking that until those words came out, and it was like, "Why would you consider that?" So, part of me is already thinking one way.

Defense counsel asked Juror 8 why she thought it would not be a privilege to represent Bustos. Juror 8 responded, "I think because in my mind I'm already thinking that there is a level of guilt."

In response to further questioning, Juror 8 agreed that she would probably be thinking of the effect sexual abuse had on the lives of her former students. Defense counsel concluded her questioning of Juror 8 by asking, "And so, is it fair to say that at this point you believe that there's probably something that Mr. Bustos did that was wrong or illegal? Is that fair to say?" Juror 8 answered, "Yes."[1]

The trial court allowed the Commonwealth to ask more questions. The following exchange occurred:

> [Commonwealth]: Now, does everyone understand – and Judge Gardiner talked at the beginning about what the presumption of innocence is. And that basically means that the Defendant until the end of the trial is presumed to be innocent.
>
> So, if all of you had to take a vote right now, if you were asked to actually go deliberate right now, you would all have to vote not guilty because you haven't heard any evidence, you haven't heard anything to convince you beyond a reasonable doubt.
>
> Does everyone agree with that?
>
> The jury panel: Yes.
>
> [Commonwealth]: Okay. So, despite, I guess, anyone's personal feelings or questions, does everyone agree that right now Mr. Bustos has the presumption of innocence?
>
> The jury panel: (Nodding heads.)

---

[1] Defense counsel also questioned other jurors who raised concerns.

[Commonwealth]: Is that a yes?

The jury panel: Yes.

The Commonwealth also directed a number of questions specifically to those jurors who had raised concerns to defense counsel, including Juror 8. The Commonwealth asked, "[D]o you understand that you decide this case based on what the evidence is in the courtroom?" and "What the witnesses say against the Defendant, what any other pieces of evidence you have, but only if you're convinced beyond a reasonable doubt of the elements of the offense do you vote to convict, do you vote for guilty; do you understand that?" The Commonwealth also asked if Juror 8 could agree that being charged is not evidence and that she would judge the case based on the evidence that is put forward. Juror 8 answered affirmatively to each question.

The trial court permitted defense counsel to ask additional follow up questions. The following exchange occurred:

> [Defense counsel]: [Juror 8], you mentioned that you – in the back of your mind the first thing that you thought of when I said, "I have the privilege to represent Mr. Bustos," was that that was surprising to you. And that was kind of a gut reaction.
>
> [Juror 8]: Right.
>
> [Defense counsel]: And it still might be hard for you to understand; is that accurate?
>
> [Juror 8]: Right.
>
> [Defense Counsel]: Okay. Even though the Prosecutor has told you that there are going to be legal instructions that you're going to be supposed to follow.
>
> [Juror 8]: Right.
>
> [Defense counsel]: It sounds like there's sort of a firmly held belief in the back of your head that somebody who is charged with a serious crime like this is likely going to be guilty because of the fact that someone is accusing him of such a serious crime; is that accurate?

- 4 -

[Juror 8]: No, I don't – I don't have a firmly held belief that –

[Defense counsel]: Okay.

[Juror 8]: – because someone is charged with a crime they are guilty.

I mean, I also know of situations, similar situations where my colleagues have been – or teachers have been accused of sexual abuse and it's not been founded.

But I do feel that you're not charged with something if there isn't some sort of evidence to charge you. You know what I mean?

[Defense counsel]: Okay, so at this stage you already think that there must be evidence against Mr. Bustos?

[Juror 8]: Whether that means he's guilty or not, I don't know, but I'm assuming there's some sort of evidence that –

[Defense counsel]: Okay.

[Juror 8]: – we will hear about.

[Defense counsel]: And at this stage it's your opinion that he is probably guilty of something?

[Juror 8]: Not necessarily.

After this exchange, defense counsel questioned another juror before returning to Juror 8.

The following exchange occurred:

[Defense counsel]: And, [Juror 8], do you feel that way, too? If he chose not to testify, do you think that means he's guilty?

[Juror 8]: Not necessarily. It would depend on what other evidence you all were able to present to us, too. I mean, I know there's reasons why people are not advised to testify. . . . So, I would hear the other evidence that was presented.

[Defense counsel]: So, you bring up evidence that we would produce. Now, you're going to be instructed that as a defense, Mr. Bustos, the Defendant, the accused, he doesn't have to put on any evidence at all and, in fact, it is the Commonwealth's burden alone to produce all of the evidence.

- 5 -

If Mr. Bustos does not produce a single piece of evidence, do you think in your mind you'll be even – do you think that it will be too hard for you to find him not guilty if he doesn't produce a single piece of evidence?

[Juror 8]: So there would be no testimony or anything telling his side of the story?

[Defense counsel]: For example – yes, so if Mr. Bustos decides that he doesn't want to testify and he doesn't put on any evidence, he doesn't put on a case at all.

[Juror 8]: And we just hear from the prosecution?

[Defense counsel]: Yes. Will it be impossible for you to find him not guilty at that point?

[Juror 8]: Not impossible, but I would think it would be difficult not to hear both sides of the story.

[Defense counsel]: Okay. And in the back of your mind, do you think you would sort of be thinking that he's probably guilty because he doesn't testify?

[Juror 8]: I don't know. I would have – I mean, it would depend on what the whole story is.

Following that exchange, Bustos moved to strike Juror 8 for cause, arguing that there was "a reasonable doubt as to whether she can be fair and impartial" because of her "visceral reaction" to defense counsel stating it was a privilege to represent Bustos and her responses to the questions. The trial court denied the motion to strike for cause, and Juror 8 was ultimately removed using a peremptory strike.[2]

## B. Jury Instructions

At the close of the evidence, the trial court reviewed the guilt-phase jury instructions agreed upon by both parties. Bustos raised an objection to Instruction 12, one of the

---

[2] It is not clear from the record whether Bustos or the Commonwealth used a peremptory strike to remove Juror 8.

Commonwealth's proposed sentencing instructions. Instruction 12 is the model jury instruction for geriatric parole, which states:

> Any person sentenced to a term of incarceration for a felony offense (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed, or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

Bustos argued that the instruction could mislead the jury and make it believe that geriatric parole is "routinely or regularly provided for inmates." The trial court declined to rule on the issue until after the jury returned a verdict and the trial court knew whether it would proceed to sentencing.

After the jury convicted Bustos, he again objected to proposed Instruction 12. He argued that geriatric parole was a factual impossibility because only 0.1% of eligible offenders were actually released on geriatric parole. Bustos argued that the instruction was misleading to the jury and might lead the jurors to believe that there was a higher possibility of release than actually existed. Alternatively, if the trial court granted the instruction, Bustos asked to amend the instruction to include the 0.1% statistic.

The trial court granted Instruction 12 without amendment, determining that it was required to give the instruction by the Supreme Court's decision in Fishback v. Commonwealth, 260 Va. 104 (2000).

Prior to the sentencing hearing, Bustos filed a memorandum asking the trial court to suspend a period of the sentence because it is statistically unlikely he would receive geriatric parole. He reiterated the 0.1% statistic and included the Department of Corrections statistics report he had cited. The report stated, "From FY2011 through FY2016, SR offenders granted geriatric release comprised approximately 0.1% of all SR offenders released annually."

Bustos also included an affidavit from one of the jurors. In the affidavit, the juror stated,

> I, along with some of my fellow jurors, believed that Mr. Bustos would go before the parole board after five years and may be eligible for parole at that time. This belief was based on the geriatric parole jury instruction that was given to us prior to deliberations. Some members of the jury decided to impose 19 years because that was the age of the victim at the time the events occurred, and thought it would send a message to the defendant. Some members of the jury did not believe he would in fact serve 19 years in prison, but many jurors, including myself believed that his time served would ultimately be up to the parole board.

The trial court imposed the jury's recommended sentence of nineteen years, suspending four years. Bustos now appeals to this Court.

## II. ANALYSIS

### A. Motion to Strike the Juror for Cause

Bustos argues that the trial court erred in denying his motion to strike Juror 8 for cause because there was reasonable doubt that she could be a fair and impartial juror.[3]

"The right of an accused to a trial by an impartial jury is a constitutional right guaranteed under both the United States Constitution and the Virginia Constitution." Brown v. Commonwealth, 29 Va. App. 199, 203 (1999). "[W]e review a trial court's decision whether to strike a prospective juror for cause for an abuse of discretion and that ruling will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes a manifest error."[4] Cressell v. Commonwealth, 32 Va. App. 744, 755 (2000). "This deference stems from

---

[3] On brief, Bustos supports his argument with Juror 8's allegedly equivocal responses to questions about whether Bustos would testify or produce evidence on his behalf. The Commonwealth argues that these issues are not preserved because his argument below was limited to whether Juror 8 could be fair and impartial. See Rule 5A:18. Though we consider only those issues properly preserved, when reviewing a denial of a motion to strike for cause, "we consider the entire *voir dire*." Lovitt v. Commonwealth, 260 Va. 497, 510 (2000). Thus, we can look at all of Juror 8's responses in reviewing whether she could be a fair and impartial juror.

[4] Though Juror 8 was ultimately removed via a peremptory strike, "[i]n the criminal context, it is well-settled that a trial court commits 'prejudicial error' if it 'forces[s] a defendant

our recognition that 'a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken.'" Hopson v. Commonwealth, 52 Va. App. 144, 151 (2008) (quoting Teleguz v. Commonwealth, 273 Va. 458, 475 (2007)).  Although we review the trial court's determination deferentially, "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" Castillo v. Commonwealth, 70 Va. App. 394, 423 (2019) (quoting Breeden v. Commonwealth, 217 Va. 297, 298 (1976)).

A prospective juror must "stand indifferent to the cause," and if he or she cannot do so, then he or she is not competent.  Taylor v. Commonwealth, 67 Va. App. 448, 454 (2017).  If a prospective juror "has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he [or she] is excluded by the law." Id. (quoting Spangler v. Ashwell, 116 Va. 992, 996-97 (1914)).

"It is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case."  Cressell, 32 Va. App. at 761 (quoting Griffin v. Commonwealth, 19 Va. App. 619, 621 (1995)).  But there is a difference "between 'a casual impression' that does not necessarily disqualify a prospective juror and 'a fixed and abiding conviction' that must disqualify a prospective juror."  Huguely v. Commonwealth, 63 Va. App. 92, 123 (2014).  "A potential juror who has knowledge of the case, even if such person has formed an opinion about the case, is entitled to sit on the jury if that opinion can be set aside." Teleguz, 273 Va. at 477 (quoting Thomas v. Commonwealth, 263 Va. 216, 231 (2002)).  The test, then, "is whether a juror is capable of laying aside a preconceived opinion and rendering 'a

---

to use peremptory strikes to exclude a [juror] from the jury panel if that person is not free from exception.'" Taylor v. Commonwealth, 67 Va. App. 448, 453-54 (2017) (second alteration in original) (quoting Roberts v. CSX Transp., Inc., 279 Va. 111, 117 (2010)).

verdict solely on the evidence.'" Cressell, 32 Va. App. at 755 (quoting Wilmoth v. Commonwealth, 10 Va. App. 169, 173 (1990)).

Initially, Juror 8 reacted negatively to defense counsel's statement that it was a privilege to represent Bustos because she was "thinking that there is a level of guilt." Bustos seizes on this and later responses of Juror 8, where she answered questions about Bustos' guilt with "I don't know" and "Not necessarily," arguing that these demonstrate that Juror 8 could not be a fair and impartial juror. Bustos contends that Juror 8's responses were equivocal and similar to the responses in Brown v. Commonwealth, 29 Va. App. 199 (1999), where this Court determined that the juror should have been struck for cause.

In Brown, the defendant was charged with a number of sexual offenses and the prospective juror had been a victim of abduction and attempted sexual assault. Id. at 203-04. When asked if her experiences would give her a bias for or against the defendant, she responded, "I don't honestly know. I would hope not." Id. at 204. The trial court informed her that she needed to provide a definitive answer: either she could or could not hear the case fairly on the evidence presented. Id. Despite this, and further questioning by both the Commonwealth and defense counsel, the juror refused to give a concrete answer, continuously saying only that she hoped she could be fair and that unpleasant memories would not interfere. Id. at 205-06. This Court determined that the juror should have been removed because "[h]er responses indicated a great degree of equivocation and created reasonable doubt about her fitness as a juror." Id. at 208.

The juror in Brown was equivocal about whether she could set aside her feelings and fairly hear the case on the evidence. Juror 8, on the other hand, was equivocal about whether Bustos was guilty. Significantly, Juror 8 repeatedly stated that she would have to wait and see what the evidence was and hear the whole story.

Juror 8 also accompanied each allegedly equivocal answer with an explanation. When Juror 8 stated that she would "[n]ot necessarily" think Bustos was guilty if he chose not to testify, she explained she "know[s] there's reasons why people are not advised to testify" and that she "would hear the other evidence that was presented." Although she admitted she would have difficulties if Bustos chose not to present evidence and answered "I don't know" to whether she would think he was guilty if he did not, she went on to explain, "it would depend on what the whole story is." These explanations are not indicative of a "fixed and abiding conviction" that would disqualify her. See id. at 123. Instead, they demonstrate Juror 8's willingness to set aside any opinion she may have had and render a verdict solely on the evidence.

Juror 8 expressly denied having a firmly held belief that Bustos was guilty because he had been charged. Though she admitted she does not think a person is charged unless there is some evidence to charge him, she followed that up by saying "[w]hether that means he's guilty or not, I don't know . . . ." Not only did she disclaim a belief that a person charged is likely guilty, but her statement was, in fact, an accurate statement of how the criminal justice system functions.

Despite her initial statements, Juror 8 agreed that the defendant was presumed innocent and that the case had to be decided on the evidence presented during trial. Notwithstanding significant pressure from defense counsel, she refused to say that she thought Bustos was guilty and reiterated that she would have to wait to hear the whole story and hear the evidence. Based on these responses, the record does not indicate that Juror 8 could not have served as a fair and impartial juror, and thus the trial court did not abuse its discretion in denying Bustos' motion to strike her for cause.

## B. The Geriatric Parole Instruction

Bustos argues that the trial court erred in granting Instruction 12, the geriatric parole instruction, during sentencing or, alternatively, that the trial court should have amended the instruction to include "the statistical likelihood of receiving geriatric parole."

"Whether a trial court erred in denying or granting a jury instruction is reviewed on appeal for an abuse of discretion." Bryant v. Commonwealth, 67 Va. App. 569, 581 (2017).

Our Supreme Court has determined that in "cases where geriatric release is a possibility, then the jury will be instructed in accordance with the applicable provisions of Code § 53.1-40.01 along with the instruction that parole is otherwise abolished." Fishback, 260 Va. at 116. Code § 53.1-40.01 provides that

> [a]ny person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

Because Bustos' age and sentence make geriatric release a possibility under Code § 53.1-40.01, the trial court was required under Fishback to instruct the jury accordingly. We are bound by our Supreme Court's decision in Fishback v. Commonwealth.[5] Therefore, the trial court did not abuse its discretion by granting the instruction.

Bustos argues in the alternative that the trial court should have granted an amended instruction, which included a statistic relating to geriatric parole, in order to avoid misleading the

---

[5] In his third assignment of error, Bustos also argues that prior decisions that require a trial court to grant the geriatric parole instruction, including Fishback, were wrongly decided. Bustos correctly acknowledges that "we are bound by the decisions of the Supreme Court of Virginia and are without authority to overrule" those decisions, Roane v. Roane, 12 Va. App. 989, 993 (1991), and he makes this argument only to preserve the issue for appeal to the Supreme Court.

jury about the actual likelihood of Bustos receiving geriatric parole. The statistic provided to the trial court stated that only 0.1% of eligible offenders actually receive geriatric parole.

Although Instruction 12 is the model jury instruction, "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions." Code § 19.2-263.2. Bustos' proposed instruction, however, was not "an accurate statement of the law." On appeal, Bustos concedes that the statistic he provided was incorrect.[6]

Furthermore, jury instructions are intended to clearly state the law. See Howsare v. Commonwealth, 293 Va. 439, 443 (2017) ("The reviewing court's sole responsibility is to ensure that the law has been clearly stated in the instructions . . . ."). The eligibility requirements for geriatric parole are statements of law. The statistical probability that someone will be granted geriatric release is a statement of fact. Consequently, the trial court did not abuse its discretion by denying the amended jury instruction.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

---

[6] Bustos argued below that 0.1% of those eligible for geriatric release are granted it. Instead, however, his supporting documents show that those released on geriatric release comprised 0.1% of all releases (for any reason) annually.